CHARLES SMITH and WILLIAM PITT ROBINSON, Appellants, *v.* THE SEATTLE, LAKE SHORE AND EASTERN RAILWAY COMPANY, Respondent.

*Broker's commissions — when due — executory contract in which the agent of the principal is to share in the broker's commissions — burden of proof — degree of knowledge required to create notice — facts under which an action upon such an executory contract is not maintainable.*

Before a broker is entitled to recover compensation for his services he must show that he has found a person able and willing to enter into the contract which he was authorized to negotiate.

If a person enters into an executory contract with another through such second person's known agent, and gives to such agent a secret interest in the contract, he cannot recover damages from the principal of such agent because of his failure to perform the contract, unless the principal, with full knowledge of the situation, ratifies the agreement; and the burden is upon the person seeking to enforce the contract of showing that the agent made a full disclosure of his interest to his principal, and knowledge on the part of the principal such as would put a prudent man upon inquiry is not sufficient.

To an action brought to recover damages for the refusal of the defendant to deliver to the plaintiffs 150 of its first mortgage bonds, alleged to have become due the plaintiffs for services rendered in procuring a construction contract for the defendant, two defenses were interposed: (1) That the plaintiffs did not procure the contract to be entered into, and (2) that the defendant's agent, who negotiated and executed the contract under which the plaintiffs claimed, was given an interest therein by the plaintiffs.

The evidence relating to the issues thus presented being considered in detail,

*Held,* that the second defense was established, and that, under the circumstances, the plaintiffs could not maintain an action upon the contract;

That this was so, even though the evidence did not show that it was agreed, before the brokerage contract was entered into, that the defendant's agent was to have a part of the bonds to be given for the plaintiffs' services.

APPEAL by the plaintiffs, Charles Smith and William Pitt Robinson, from a judgment of the Supreme Court in favor of the defendant, made at the New York Circuit and entered in the office of the clerk of the city and county of New York on the 28th day of February, 1893, dismissing the plaintiffs' complaint, and from an order made at the New York Circuit, entered in said clerk's office on the 24th day of February, 1893, denying the plaintiffs' motion to set aside the direction dismissing the complaint and to grant a new trial.

*John II. V. Arnold* and *Gilbert D. Lamb*, for the appellants.

*Edgar M. Johnson*, for the respondent.

FOLLETT, J. :

This action was brought to recover $150,000 damages, with interest from December 3, 1887, for the refusal of the defendant to deliver to the plaintiffs 150 of its first mortgage six per cent gold bonds of the par value of $1,000 each, alleged to have become due to the plaintiffs for services rendered in procuring a construction contract for defendant. Two defenses were interposed : (1) That the plaintiffs did not procure a construction contract to be entered into, and (2) that defendant's agent who negotiated and executed the contract under which the plaintiffs claim, was given an interest therein by the plaintiffs.

Prior to April, 1886, the defendant was incorporated under the laws of the Territory of Washington, and authorized to construct a railroad several hundred miles in length. Its affairs were managed by a board of trustees who possessed the powers usually exercised by boards of directors. From April to August 10, 1886, Daniel H. Gilman was one of the trustees of the defendant, and was the general manager of its business.

On the 17th of April, 1886, defendant's board of trustees adopted a resolution appointing Gilman the agent of the corporation, with power to make a contract or contracts for the construction of the whole or any part of its line, subject, however, to the approval of the board. Immediately after the adoption of this resolution Gil-

man left Seattle for St. Louis, Mo., where, in the month of April, he met William P. Robinson, one of the plaintiffs, and Charles M. Sheafe; he disclosed to these gentlemen his powers and his purpose, and asked for their assistance. Robinson stated to Gilman that sufficient aid to build the road could not be obtained in St. Louis, and that it should be sought in the city of New York, and gave him a letter of introduction to Charles Smith, Jr., one of the plaintiffs. Gilman presented his letter to Smith, and they immediately began to contrive means to secure a contract for the construction of all or of some part of defendant's road. Shortly after Gilman and Smith had entered into negotiations, Robinson and Sheafe went from St. Louis to New York, at which city various consultations were had between these four gentlemen in respect to the enterprise. The result was that at some time (the date of its execution not very clearly appearing) a contract was entered into by Smith in behalf of himself and Robinson of one part, and the railroad company on the other part, of which the following is a copy :

"This agreement, made this 5th day of June, 1886, between the Seattle, Lake Shore and Eastern Railway Company, by D. H. Gilman, its duly authorized agent, party of the first part, and Charles Smith, Jr., broker, of the city of New York, party of the second part, witnesseth :

"Whereas, The party of the first part is desirous of securing a responsible person or company to build its road, and, for that purpose, is authorized to issue bonds at the rate of $25,000 per mile, and such amount of stock as may be necessary ; and,

"Whereas, The party of the second part is willing to undertake to procure the making of a construction contract with such person or company upon sufficient consideration or remuneration being guaranteed to him ;

"Now, therefore, in consideration of the premises, and of the sum of one dollar to it paid by the party of the second part, the party of the first part hereby agrees, in case said second party succeeds within a reasonable time in securing the making of such a contract, whereby the contractors receive stock at a rate not to exceed $15,000 per mile, and bonds at the rate of $20,000 per mile, for the first forty miles, and $25,000 per mile thereafter, to pay said second party $150,000 in its first mortgage six per cent gold bonds, said

bonds to be delivered as soon as they may be under the terms of the
mortgage, after discharging the obligations of the party of the first
part to the contractors.

"In witness whereof, the parties hereto have hereunto subscribed
their names the day and year first above written.

"SEATTLE, LAKE SHORE AND EASTERN RAILWAY CO..

"by D. H. GILMAN, *Agent.*

"CHARLES SMITH, JR."

Whether the foregoing contract was executed on the day of its
date or after the formation of the construction company about to
be described is left uncertain by the testimony. Robinson, the only
witness who speaks in respect to it, testified that he was not certain
whether the agreement was executed in July and antedated, or
whether it was signed on the day of its date.

On the 3d of July, 1886, Daniel H. Gilman, Charles M. Sheafe,
William P. Robinson, Thomas Burke and Franklin M. Jones exe-
cuted articles incorporating the Puget Sound Construction Com-
pany, with a nominal capital of $1,000,000, divided into shares of
$100 each. The object of the corporation was to construct and
equip railroads. It was provided that the five persons mentioned
were to act as trustees until December 30, 1886.

On the 9th of July, 1886, an agreement was entered into between
the defendant and Jameson, Smith & Cotting, of which the follow-
ing is a copy :

"Memorandum of agreement made this 9th day of July, 1886,.
between the Seattle, Lake Shore and Eastern Railway Company, by
D. H. Gilman, its duly authorized agent, party of the first part,.
and Jameson, Smith & Cotting, brokers, of New York, parties of
the second part. In consideration of the parties of the second part
aiding in obtaining and receiving subscriptions for five hundred
thousand dollars to the Puget Sound Construction Company, for the
purpose of building forty miles of said Seattle, Lake Shore and
Eastern Railway, the party of the first part agrees to pay and deliver
to Jameson, Smith and Cotting, parties of the second part, fifty
thousand dollars of its first mortgage 6 per cent gold bonds, and
forty thousand dollars of its full paid capital stock, to be delivered
to said parties of the second part as soon as said bonds and capital

stock are ready for delivery, and, as a further part of this contract, in consideration of such services as parties of the second · part may render in the extension of said railway, the parties of the first part agree for themselves and their successors to pay and deliver to said parties of the second part one thousand dollars per mile in the full paid capital stock of Seattle, Lake Shore and Eastern railway as each section of ten miles is completed after the first forty miles are built, and such usual and regular commissions as are charged by first-class corporations or firms acting in the capacity of financial agents.

" In witness whereof, the said parties have hereunto subscribed their names the day and year above written.

                    " SEATTLE, LAKE SHORE AND EASTERN
                           RAILWAY COMPANY,

                             " by D. H. GILMAN, *Agent.*
" In the presence of        JAMESON, SMITH & COTTING.
" HOMER A. HOITS."

At some time between July 3 and August 10, 1886, a proposed agreement for the construction of a part of defendant's road was drafted. By it the construction company undertook to commence work September 1, 1886, and continue the work until the road was completed.

On the 10th of August, 1886, at a meeting of the defendant's board of trustees held at Seattle, there were present J. R. McDonald, Thomas Burke, F. H. Osgood, Thomas T. Minor and Daniel H. Gilman. At this meeting Burke and Gilman, who had become interested in the construction company, resigned as trustees of the railroad ; their resignations were accepted and their successors were then chosen and immediately qualified. After this had been done Gilman reported to the board of trustees his action in the premises. His report set forth copies of the contract with the plaintiffs, dated June fifth, and the contract with Jameson, Smith & Cotting of July 9, 1886, and also a copy of the proposed construction contract. This contract was never executed by the construction company nor by the railroad company, and there was no evidence that it was ever approved of by the trustees of the construction company; indeed, Robinson, who was president of that company, and is one of the

plaintiffs in this action, testified that he was never authorized by the board of trustees to execute that contract. At the date of this meeting, August 10, 1886, only 810 of the shares of the construction company had been subscribed for. Thirty-five thousand dollars had been subscribed by two persons through the solicitation of Gilman. These two subscriptions were subsequently paid. Robinson subscribed $20,000; a gentleman by the name of Henson, $5,000, and Knowlton, $10,000; none of these subscriptions were ever paid.

On the tenth of August the construction company was a mere shell, a corporation in name but without a paid-up capital. Subsequently, Jameson, Smith & Cotting, in pursuance of their contract, secured a sufficient number of shares of the company to be subscribed and paid for to enable the company to undertake the work of constructing the defendant's road.

On the 1st day of January, 1887, Robinson ceased to be president of the construction company, and another person was elected in his stead. On the 12th of January, 1887, the contract was entered into between the construction company and the defendant, under which a portion of the road was completed. This contract was executed by Mr. Sheafe, general manager of the construction company, and by Mr. J. R. McDonald, president of the railroad company. There is no evidence in the case which tends to show that the plaintiffs, or either of them, were in any way instrumental in securing this contract. The agreement under which the plaintiffs claim to recover is what is known as a brokerage contract. Before a broker is entitled to recover compensation for his services he must show that he has found a person able and willing to enter into the contract which he was authorized to negotiate. This rule is elementary and does not require the citation of authority.

The construction company on the 10th day of August, 1887, had not the ability to undertake the construction of the work; it was without capital, and, besides, its board of trustees had never authorized the making of the contract submitted to the defendant's board of trustees. The plaintiffs, as was well held at the Circuit, failed to show that they performed the contract under which they claim. Again, Robinson, one of the plaintiffs, testified that Daniel H. Gilman, who was agent and at that time a trustee of the defendant, was to receive $50,000 of the $150,000 of the bonds which the railroad

company was to deliver under the contract with the plaintiffs. This evidence was not contradicted although Smith was on the stand, nor was it explained, and it is quite evident that these plaintiffs and Gilman were equally interested in the brokerage contract of June fifth. It is not pretended that Gilman's interest was disclosed to the trustees or officers of the defendant.

It is an elementary rule of law that if A enters into an executory contract with B through C, the known agent of B, and gives to C, the agent, a secret interest in the contract, A cannot recover damages from B for his failure to perform the contract, unless the latter, with full knowledge of the situation, ratifies the agreement. This rule is founded on the plainest principles of justice. Agents are bound to exercise the utmost good faith towards their principals and cannot lawfully take secret interests in contracts which they are authorized to make. When an agent is employed to sell, he cannot lawfully become the purchaser; or, if he is authorized to buy, he cannot lawfully become the seller. When he violates these rules he commits a fraud on his principal, and whoever gives an agent interest in a contract which he is authorized to make, becomes a guilty participant in the fraud of the agent, and a contract so entered into is voidable at the election of the principal. (*Munson* v. *The Syracuse, Geneva & Corning R. R. Co.*, 103 N. Y. 58; *Risley* v. *The Indianapolis, Bloomington & Western R. R. Co.*, 62 id. 240; *Conkey* v. *Bond*, 34 Barb. 276; affd., 36 N. Y. 427; *Twin-Lick Oil Co.* v. *Marbury*, 91 U. S. 587; *Wardell* v. *Railroad Co.*, 103 id. 651; *Salomons* v. *Pender*, 3 H. & C. 639; *Harrington* v. *The Victoria Graving Dock Co.*, 3 Q. B. D. 549; *Smith* v. *Sorby*, Id. 552; *Panama & South Pacific Tel. Co.* v. *India Rubber, Gutta Percha & Tel. Works Co.*, L. R. [10 Ch. App. Cas.] 515; *Mayor, etc., of Salford* v. *Lever*, 25 Q. B. Div. 363; affd., C. A. (1891) 1 Q. B. 168; Story Ag. §§ 210, 211.)

In *Harrington* v. *The Victoria Graving Dock Co.* (*supra*), the defendant repaired ships for the Great Eastern Railway Company. The plaintiff was employed by the railroad company as an engineer to advise in relation to repairing ships and to estimate the cost of the repairs. The plaintiff alleged in his complaint that the defendant agreed to pay him five per cent for superintending the repairs. The defendant answered that the agreement was made to induce the

plaintiff to use his influence with the railway company to accept the defendant's offer to make the repairs. The jury found that the agreement to pay the five per cent was partly in consideration of the plaintiff's superintending the repairs, and partly in consideration of the plaintiff's promise to use his influence with his employers (the railway company) to accept of defendant's proposals. But the jury further found that the agreement did not bias the plaintiff's judgment or action to the detriment of the railway company, notwithstanding it was held that the agreement was a corrupt one, and that the plaintiff could not recover the compensation agreed to be paid.

The learned Chief Justice, LORD COCKBURN, in discussing the case, said :

" I will assume, for the purposes of argument, that the agreement did not influence the mind of the plaintiff so as to induce him to do anything dishonest towards his employers, the Great Eastern Railway Company. I entertain no doubt, however, that when a bribe is given, or a promise of a bribe is made to a person in the employ of another by some one who has contracted, or is about to contract, with the employer, with a view to inducing the person employed to act otherwise than with loyalty and fidelity to his employer, the agreement is a corrupt one, and is not enforceable at law, whatever the actual effect produced on the mind of the person bribed may be. The tendency of such an agreement as this must be to bias the mind of the agent or other person employed, and to lead him to act disloyally to his principal. It is intended by the party who promises the bribe to have that effect, and the other party knows such is his intention. Such a bargain is obviously corrupt."

. In *Mayor, etc., of Salford* v. *Lever* (*supra*), it was held that a principal whose agent has received a consideration from the other party to the contract, made or induced by the agent, may recover the sum received by the agent in an action against him, and also all damages sustained from the agent and the contractor. This judgment rests on the ground that the defendant and the contractor were joint wrongdoers.

But it is said in the case at bar that the evidence does not show that it was agreed, before the contract of June third was made, that Gilman was to have any part of the bonds to be given for the plain-

tiff's services. If this is true it does not help the plaintiff's contention. The contract was an executory one, and the defendant was entitled to have the disinterested judgment of Gilman (its agent), who was authorized to negotiate a construction contract, as to the terms thereof, and also with whom it (the contract) should be entered into. When it was agreed between the plaintiffs and Gilman that the latter should have one-third of the bonds to which the plaintiffs would be entitled on procuring a satisfactory contract, Gilman had a direct pecuniary interest in accepting such a contract and contractor as the plaintiffs might tender. Gilman was no longer the defendant's disinterested agent, but was under temptation offered by the plaintiffs to sacrifice the interest of his principal to his own. This rendered the original agreement voidable at the election of the defendant,

Robinson testified that in the latter part of December, 1886, Smith, his co-plaintiff, received a notification from the defendant that the agreement had been rescinded. Under such circumstances the plaintiffs cannot maintain an action upon the contract. It is urged that the stockholders of the defendant knew that Gilman had an interest in the contract and that whether they had ratified his action or not was a question of fact for the jury. When it appears that an agent has an interest in the contract negotiated by him in behalf of his principal the burden is on the party seeking to enforce the contract of showing that the agent made a full disclosure of his interest to his principal. (*Dunne* v. *English*, L. R. [18 Eq. Cas.] 524.) .

Such knowledge on the part of the principal as would put a prudent person on inquiry is not sufficient. A principal and agent are not dealing at arm's length, but sustain a confidential relation to each other demanding the exercise of the utmost good faith. In the case at bar there is no evidence that the defendant's directors knew on the tenth of August, when they ratified the action of Gilman, that he was to have any interest in the contract under which the plaintiffs claim.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment affirmed, with costs.