# PAUL N. DE CRETTE

## vs.

# DONALD I. MOHLER.

*Broker's Commissions—Procurement of Loan—Contingent Contract—Evidence.*

A contract for a loan, which was by its terms to be effective only in case one party thereto succeeded in enforcing a contract for the sale to him of certain property, in which case a corporation should be formed to take over the property and to execute a trust deed thereon to secure bonds representing the loan, the trust deed and bonds to be approved by the officers and stockholders of such corporation, was not a "binding and enforcible contract" within the meaning of Code, art. 2, sec. 17, providing that the procurement and acceptance of such a contract shall entitle the broker to his agreed commissions.        pp. 151-153

In an action for commissions for the procurement of a loan, it was proper to refuse to grant a prayer directing a verdict for defendant, in view of plaintiff's evidence that he was to be paid commissions even though, as actually occurred, defendants did not succeed in enforcing a contract for the purchase of the property on which the loan was to be secured.        p. 153

Witnesses for defendant having mentioned a contract, prepared by plaintiff, which defendant refused to sign, *held* that a witness for plaintiff, called in rebuttal, could testify in regard to such unexecuted contract.        p. 154

*Decided November 16th, 1923.*

Appeal from the Superior Court of Baltimore City (FRANK, J.).

Action by Donald I. Mohler against Paul N. De Crette and Margaret De Crette for commissions. From a judgment for plaintiff against said Paul N. De Crette, the latter appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Abram C. Joseph,* with whom was *Daniel C. Joseph* on the brief, for the appellant.

*Walter V. Harrison,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

In February, nineteen hundred and twenty, the appellant, Paul N. De Crette, and his wife, Margaret De Crette, agreed in writing with Charles J. Bonaparte to purchase from him the property known as No. 6 South Calvert Street, in the City of Baltimore, at and for the sum of fifty-five thousand and seven hundred dollars, of which one thousand dollars was paid in cash upon the execution of the contract, and the remainder was to be paid not later than June 1st thereafter.

De Crette needed about thirty thousand dollars, in addition to what he had, to consummate the purchase of the property. This he tried to borrow within the time granted him under the contract, but failed in his efforts to do so, and it was because of such failure that Mr. Bonaparte sold the property to Smith, Lockart and Company. De Crette and wife thereupon filed a bill asking for the specific performance of the contract made by them with Mr. Bonaparte.

John R. M. Staum, an attorney, who had been employed by De Crette to procure the loan and who had failed in his efforts to do so, wishing to avoid appearing both as witness and counsel in the proceedings to enforce the specific performance of the contract with Mr. Bonaparte, had J. Stanalaus Cook, who with Victor I. Cook compose the law firm of Cook and Cook, to file the bill for such specific performance, he not appearing as counsel either in the lower court or in this Court.

De Crette, however, during the pendency of said proceedings, continued his efforts to obtain the loan in order that

he might complete the sale if the decision therein was in his favor.

Among those solicited to procure the loan was the appellee, Donald I. Mohler, and it appears from the record that arrangements were made with him through the counsel of De Crette that if he succeeded in procuring it he would be paid therefor a flat commission or fee of fifteen hundred dollars, but, as claimed by the appellant, this fee was not to be paid unless the pending case was decided in his favor and the money needed by him to consummate the sale, while the appellee contends that the fee of fifteen hundred dollars was to be paid without regard to such decision and the appellant's need of the money to complete the sale.

The agreement as to commissions or fee was oral and not in writing. In the record, however, is found a written contract stating how and by whom the loan was to be raised, and the terms and conditions upon which the same was to be made.

This agreement was executed by Paul N. De Crette and Margaret De Crette, designated therein as the first party, and Frank L. Mohler, Stephen J. Van Lill, Sr., and Donald I. Mohler, designated as the second, third and fourth parties, respectively.

In the contract it is stated that De Crette and wife were at that time conducting a cafeteria in said property and were the holders of a contract made with Charles J. Bonaparte for the sale of said leasehold property at the sum mentioned and upon which they had filed the bill for specific performance.

It also states that "for the purpose of financing said purchase," it was agreed by the parties that in the event of the contract being specifically enforced by a decree of the court below and affirmed by the Court of Appeals, if the case was taken to that court, the appellants were to form a corporation to which they were to "transfer all their rights under said contract of sale, or the decree to be passed thereon, and all their right, title and interest in all the chattel property

located" upon the premises, No. 6 South Calvert Street, "used in the conduct of their business," and that, upon the transfer of the assets aforesaid, the parties of the first part were to "cause to be executed by said corporation to some trust company, or bank with trust powers, to be designated by the second, third and fourth parties, a first mortgage deed of trust, conveying, by a good and merchantable title, the said leasehold property, subject to the annual rent of twelve hundred dollars, and said chattel property, to secure the payment of an issue of thirty-eight bonds of one thousand dollars each, numbered from one to thirty-eight, inclusive, at the rate of six per cent per annum and payable at the expiration of ten years from the date of said mortgage deed of trust."

The contract then provides that the bonds shall have attached to them interest coupons, payable semi-annually, and that a sinking fund be created by the payment of certain sums of money at the times therein named for the retirement of said bonds.

It is further provided by the contract that

"There shall be submitted to the attorneys of the second, third and fourth parties, for their approval, the charter and organization papers for said mortgagor corporation, the deed to said corporation and the mortgage deed of trust and bonds to be issued thereunder, and all other papers in connection with the transfer of property of the first parties to said corporation, all of which shall receive the approval of the stockholders, directors and officers of said corporation and which charter, deed, mortgage deed of trust, bonds and other papers shall be so drawn as to effect the intention of the parties as set out in this contract."

The agreement then contains the provision that

"Upon the issuance of said bonds as aforesaid, the second party (Frank L. Mohler) agrees to buy and pay for the bonds numbered 1 to 13, inclusive, the sum of ten thousand one hundred and forty dollars ($10,-140.00). The third party (Stephen J. Van Lill, Sr.,)

agrees to buy and pay for bonds 14 to 32, inclusive, the sum of fourteen thousand eight hundred and twenty dollars ($14,820.00). The fourth party (Donald I. Mohler, the appellee,) agrees to buy and pay for bonds 33 to 38, inclusive, the sum of forty-six hundred and eighty dollars ($4,680.00)."

It is then provided that

"In event of the contract not being specifically enforced by a decree of the Circuit Court Number 2 of Baltimore City, and said action of the court in not so enforcing it being approved by the Court of Appeals of Maryland, if an appeal is taken, the said first parties as a consideration for the signing of this agreement by the other parties hereto, will pay to the said second party a sum of one hundred dollars ($100.00), to the said third party a sum of one hundred and fifty dollars ($150.00), to said fourth party a sum of fifty dollars ($50.00) the receipt whereof are hereby acknowledged."

The contract further states:

"(a) The first parties agree to pay or cause to be paid by said mortgagor corporation a sum sufficient, when added to the amount to be paid by the second, third and fourth parties, for and on account of the mortgage bonds aforesaid to complete the entire purchase price (to wit, $55,700.00) for said property.

"(b) This agreement shall terminate upon the final adjudication of said case by the courts of this State, refusing to specifically enforce said contract of sale, but after February 1, 1921, the first parties shall pay to each of the said second, third and fourth parties the respective sums of one hundred dollars ($100.00), one hundred and fifty dollars ($150.00), and fifty dollars ($50.00) for each two months that this agreement shall continue in force, said payments to be made in advance, and to be retained, as liquidated damages, by the second, third and fourth parties in the event said

courts finally refuse to decree specific performance of said contracts. * * *

"(c) It being understood and agreed however that in no event shall this agreement extend more than one and one-half years from the date hereof, and if said, case shall not have been finally adjudicated within one and one-half years from the date hereof, then this agreement shall be null and void and all payments made to the second, third and fourth parties shall be retained by them as liquidated damages."

On December 5th, nineteen hundred and twenty, the day upon which the above stated contract was executed, a further contract of agreement in writing was made by John R. M. Staum, Donald I. Mohler, Victor I. Cook and J. Stanalaus Cook, by which they agreed

"That the purchase price for the six bonds subscribed for by Donald I. Mohler under an agreement between the said Donald I. Mohler *et al.,* and Paul N. DeCrette and wife of even date herewith, shall be paid by Donald I. Mohler one-third (1/3), by John R. M. Staum, one-third (1/3), and by Victor I. Cook and J. Stanislaus Cook, one-third (1/3) and two of said bonds shall be delivered to each of the parties so paying one-third."

The equity court, in which said bill for specific performance was filed, by its decree dismissed the bill of De Crette and wife, and from that decree an appeal was taken to this Court, where the decree of the lower court was affirmed. *De Crette* v. *Bonaparte,* 139 Md. 252.

As a result of that decree the loan which, in the event of a decision in favor of DeCrette and wife, was to be used in the payment of the purchase money for the property bought from Mr. Bonaparte under his contract with them, was no longer needed by them, and the contract relating to the procurement of the money came to an end by its own provision.

Thereafter the suit in this case was brought by the appellee, Donald I. Mohler, by Cook and Cook, his attorneys, to

recover the said fee or commissions for the procurement of the alleged loan made by him.

The trial of the case resulted in a verdict for the plaintiff for the sum of six hundred and twenty-five dollars against both defendants, but, as a result of the court's ruling on a motion for a new trial, the verdict against the wife was stricken out with the consent of the plaintiff, and a judgment entered against the husband alone. It is from that judgment that the appellant has appealed.

In the trial of the case twenty-three exceptions were taken to the rulings of the court, twenty-two of which relate to the admission of evidence and one to the prayers.

By the plaintiff's second prayer, the only one granted him, the court instructed the jury "that the uncontradicted evidence in this case discloses that the plaintiff was a licensed real estate broker and that the plaintiff procured an agreement to lend by way of mortgage the sum of twenty-nine thousand, six hundred and forty dollars to the defendants, which agreement was reduced in writing, accepted by the defendants and signed by them, and the court further instructs the jury that because of these facts the plaintiff is entitled to recover in this action unless the jury shall find that said plaintiff had agreed that no compensation should be paid him unless the said sum of twenty-nine thousand, six hundred and forty dollars was actually paid to the defendants."

This prayer was granted upon the provision of the statute of 1910, chapter 178 (section 17, article 2 of the Code) which provides:

"Whenever in the absence of special agreement to the contrary, a real estate broker employed to sell, buy, lease or otherwise negotiate real or leasehold estates or mortgages, or loans thereon, procures in good faith a * * * mortgagee * * * or lender * * *, and the person so procured is accepted as such by the employer, and enters into a valid, binding and enforcible written contract of * * * loan, in terms acceptable to the employer,

and such contract is accepted by the employer and signed by him, the broker shall be deemed to have earned the * * * agreed commissions * * *, whether or not the contract entered into be actually into effect, unless the performance of such contract be prevented, hindered or delayed by any act of the broker."

The written agreement in this case, involving the procurement of the loan, starts out, not with the statement that De Crette and wife were the owners of the property upon which a mortgage was to be executed to secure a loan to them, but that they were the holders of a contract of sale for said property upon which they have instituted proceedings for specific performance, and then states that the contract is to be effective only in the event of its being specifically performed.

The contract also contains the provisions that De Crette and wife were to incorporate a company to which they were to transfer this and other property and thereafter cause to be executed by that corporation, to secure the proposed loan, a mortgage deed of trust to a trust company or bank, with trust powers, to be designated by the proposed lenders, conveying to it a good and merchantable title to said property; and when all this was done the "charter and organization papers" as well as the deed to the corporation and the mortgage deed of trust, bonds and other papers in connection therewith, should be submitted not only to the attorneys of the lenders but to the stock holders, directors and officers of said corporation for their approval, with the implied meaning that if the same were not approved by all of said persons, the loan would not be made.

It is moreover provided in the contract that if the litigation was not ended within the time therein mentioned, although the contract provided for the payment of interest on the proposed loan until the decision was made, the agreement should be null and void.

The uncertainty of the consummation of the loan caused by the contingencies mentioned, which were not within the control of the borrowers, but in some instances subject to the arbitrary action, not only of the parties that were to make the loan but to the stockholders and directors of the corporation yet to be incorporated, who were at the time unknown, does, we think, take the agreement out of the class of "binding and enforcible contracts" contemplated by the statute, and therefore the prayer in our opinion should not have been granted. *Navarre Realty Co.* v. *Coale,* 122 Md. 494.

The defendants offered twelve prayers. The first and second prayers asked for a verdict for the defendants because of the want of legally sufficient evidence. These prayers, we think, were properly refused, upon the evidence offered by the plaintiff, that it was agreed that he should be paid commissions even though De Crette and wife did not obtain a decree in their favor in their suit against Mr. Bonaparte, although the evidence thereon was conflicting.

The third and fourth prayers applied to the wife, Mrs. De Crette, and therefore need not be considered, as there is no judgment against her.

The fifth prayer was, we think, properly refused, as it ignores the evidence of the plaintiff in support of his claim that he was to receive commissions though De Crette and wife were unsuccessful in their suit for specific performance.

The defendants' sixth prayer was granted.

The meaning of the seventh prayer is not clearly stated and is capable of being misunderstood, but in any event the refusal of it worked no injury to the defendants, in view of the granting of the sixth prayer.

It may also be said, without passing upon the correctness of the eighth, ninth and tenth prayers, that they were covered by the granted prayers of the defendants and consequently there was no harmful error in their refusal.

No exceptions were taken to the modification of the eleventh and twelfth prayers.

We will now consider the exceptions to the evidence. The first to the tenth, inclusive, involve the question of employment of Mohler and the amount to be paid to him as commissions. This evidence, if wrongfully admitted at the time, became harmless upon the admissions of De Crette afterwards made in respect thereto. And we discover no errors in the court's rulings upon the eleventh, twelfth, thirteenth and fourteenth exceptions.

The fifteenth, sixteenth, seventeenth and eighteenth exceptions were taken to the admission of certain evidence of Victor I. Cook, which among other things involved the question of employment, and the amount of compensation to be paid Mohler as commissions. In none of these exceptions do we find any harmful errors committed by the court.

The nineteenth, twentieth, twenty-first and twenty-second exceptions were taken to other evidence of Victor I. Cook, relating to a contract prepared by Mohler, or at his instance, on or about the 5th of December, nineteen hundred and twenty, to be signed by the defendants, providing for the payment to the plaintiff of the sum of seven hundred and fifty dollars, in the event De Crette and wife were unsuccessful in their suit for specific performance against Mr. Bonaparte, and which was given to Staum to have De Crette sign, but which De Crette refused to execute. This unexecuted contract had been previously mentioned by Staum and others in their evidence, and we discover no error in the court's rulings in admitting what was said by Cook in reference thereto.

Because of the granting of the plaintiff's prayer, which we have said should not have been granted, the judgment of the court below will be reversed.

*Judgment reversed, new trial awarded, appellee to pay costs.*