## PAUL N. DE CRETTE vs. DONALD I. MOHLER.

*Action for Commissions—Evidence—Secret Interest of Agent—
Effect as Invalidating Contract—Copy of Con-
tract—Admissibility.*

In an action for commissions for procuring a loan, a question asked plaintiff as to how much he paid another who assisted in procuring the loan, while immaterial, did not constitute reversible error.                    p. 112

A typewritten copy of a contract, the original of which was filed in a suit in another court, was properly admitted when attested by the clerk of such court.                    p. 112

A witness having testified that he was familiar with a certain person's signature, and had seen the original contract, a copy of which was in evidence, could testify as to the genuineness of that person's signature on such contract.                    p. 112

In an action for commissions for securing a loan, *held* that, in view of the conflict in the evidence, whether commissions were to be paid if the loan, though procured, was not actually made, was a question for the jury.                    p. 113

A prayer that there is no evidence legally sufficient under the pleadings to entitle plaintiff to recover, and therefore the verdict must be for defendant, is insufficient, under Code, art. 5, sec. 9A, to enable the appellate court to pass upon the sufficiency of the pleadings.                    p. 113

An agent cannot, without full disclosure, buy from or sell to his principal, or make a secret profit out of any transaction with the latter, and it is immaterial whether the interest of the agent causes any loss to the principal.                    p. 115

One who makes a contract with another through such other's known agent, and gives the agent a secret interest in the contract, cannot recover against the principal for breach of the contract.                    p. 116

The burden of proving that one, with whom a contract was made through his agent, had full knowledge of the agent's

antagonistic interest in the contract, is upon the party enforcing the contract.                                                   p. 117

It being possible for the jury to find that a contract between plaintiff and defendant for the procurement by plaintiff of a loan for defendant was made through defendant's attorneys as his agents, it being admitted that the commissions for procuring the loan were to be divided between plaintiff and such attorneys, and it not conclusively appearing from the evidence that defendant knew of his attorneys' interest in the commissions, it was error, in an action by plaintiff for the commissions, to refuse a prayer submitting to the jury the question of such knowledge on defendant's part.                  pp. 114-117

*Decided January 14th, 1925.*

Appeal from the Superior Court of Baltimore City (STANTON, J.).

Action by Donald I. Mohler against Paul N. De Crette. From a judgment for plaintiff, defendant appeals. Reversed.

The case was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE and WALSH, JJ.

*Abram C. Joseph,* with whom was *Daniel C. Joseph* on the brief, for the appellant.

*Walter V. Harrison,* for the appellee.

WALSH, J., delivered the opinion of the Court.

This suit was brought by the appellee to recover commissions alleged to be due him for securing a loan for the appellant. On a previous appeal (*De Crette v. Mohler,* 144 Md. 145), the judgment of the lower court in favor of the appellee, the plaintiff below, was reversed, and the cause remanded. The trial again resulted in a verdict and judgment for the plaintiff, this time for $500, and the defendant has appealed a second time.

On February 2nd, 1920, the appellant, Paul N. De Crette, and his wife entered into a contract with Charles J. Bonaparte for the purchase of the latter's property at No. 6 South Calvert Street, in Baltimore City, for the sum of $55,700, of which sum $1,000 was paid when the contract was signed, and the balance was to be paid not later than the first of June following. This contract was procured for the De Crettes by their agent and attorney, John R. M. Staum, he signing the contract on their behalf. To complete the purchase it became necessary for De Crette to raise about $30,000 by way of mortgage on the property, and he asked Staum to secure this money, giving him authority to act as his general agent throughout the transaction. Staum, who was a lawyer, had offices with two other lawyers, J. Stanislaus Cook and Victor I. Cook, the two last named being partners, and on the day the contract was signed Staum mentioned the matter to J. S. Cook, but did not, at that time, ask his assistance in securing the necessary loan on the property. About the end of March, however, he did ask his help, and from that time on both Staum and Cook made a number of unsuccessful efforts to obtain the money. On June 1st, the $30,000 not having been secured, Mr. Bonaparte was asked to extend the time for completing the purchase to June 14th, which extension was granted. On the latter date Cook notified Staum that one Westheimer had approved the loan and would advance the money, but at 1 P. M. on that day Mr. Bonaparte sold the property to Smith, Lockhart & Company.

De Crette then authorized Staum to file a suit for specific performance against Bonaparte, and Staum employed J. S. Cook to assist him in the suit. Westheimer declined to hold the money needed for the loan until the suit could be determined, and Cook thereupon took the matter up with the appellee, Mohler, a client of his who was engaged in the real estate business. Cook testified regarding this that he "spoke to Mohler first, then Staum and witness spoke to him, then Staum, witness and De Crette spoke to him; * * * that witness knows all about Mohler's compensation; that when the

proposition was on a mortgage basis he was to be paid five per cent. of $30,000; that witness knew what had been offered in the first instance and witness made the first offer; that five per cent. or $1,500, the same thing, was communicated to De Crette and was acceptable to him." He also testified that there was an agreement between Staum, Mohler and the witness to divide equally between themselves the commission to be paid by De Crette. The existence of this agreement was admitted by both Staum and the appellee, and the latter further testified that Cook & Cook were attorneys for the appellant, and were also his, the appellee's, attorneys.

Being unable to secure any one person to make the mortgage loan required, a bond mortgage for $38,000 was arranged, and Mohler procured and had executed an agreement between the De Crettes and Frank L. Mohler, Stephen J. Van Lill, Sr., and himself, whereby the three last mentioned were, under certain conditions and in certain proportions, to pay $29,640 for the $38,000 of bonds. The agreement was silent on the question of commissions, but it provided that certain payments in the nature of interest be made by the De Crettes to the other parties pending the outcome of the specific performance suit, and the evidence shows that these payments were made. The evidence further shows that two-thirds of the money to be furnished personally by the appellee under the above agreement was to be put up by Staum and Cook, they were each to receive a proportionate number of the bonds, and they each did receive their respective shares of the payments made by the De Crettes, the money being collected and divided by the appellee. It does not appear whether or not the appellant knew that his agents Staum and Cook had an interest in this agreement.

It further appears that when the bond mortgage plan was adopted the oral agreement for commissions was changed from five per cent. to a straight commission of $1,500, and the agreement as to the division of the commission between the appellee, Staum and Cook remained unchanged.

The De Crettes lost the specific performance suit, did not acquire the property, and the loan secured by the appellee was never made. The latter thereupon demanded the payment of the $1,500 commission, on the theory that his contract was performed and the commission earned when the agreement for the loan was signed. Payment was refused by the appellant, it being his contention that there was no agreement to pay a commission if the loan was not actually made, and this suit followed.

The first fifteen exceptions were taken to the rulings of the court on evidence, and the sixteenth was taken to the action of the court in refusing to grant certain prayers offered by the defendant.

We find no reversible error in the rulings of the court on the first, second, seventh, eighth, ninth and tenth exceptions. The matters excluded or admitted by these rulings were later testified to without objection, and hence no harm was done the appellant. Nor do we find any error in the court's rulings on the eleventh, twelfth, thirteenth and fourteenth exceptions. The fifteenth exception was taken to the court's ruling permitting the appellant to be asked the question, "how much have you paid Cook?" We think this question was immaterial, but the asking of it certainly did not constitute reversible error. The third, fourth, fifth and sixth exceptions were based on the court's action in admitting a typewritten copy of the contract between the De Crettes and Bonaparte for the purchase of the property at No. 6 South Calvert Street, and the admission of certain evidence of J. S. Cook regarding the signature of Staum on the original contract. It appears that the original was filed in the suit for specific performance, and as the copy offered in this case was attested by the clerk of court, we think it was properly admitted. The evidence of Cook concerning Staum's signature on the original was also admissible, he having previously testified that he was familiar with Staum's signature, and had seen the original contract.

The sixteenth exception was taken to the refusal of the court to grant the defendant's third, fourth, seventh, eighth, ninth, tenth, thirteenth and fourteenth prayers.

The defendant's third prayer asks that the case be taken from the jury for lack of sufficient evidence, and it is identical with the defendant's first prayer on the previous appeal. The refusal to grant the prayer was then held by us to be proper. *De Crette v. Mohler, supra.* And we perceive nothing in the record in the present case to cause us to change that ruling. There is a great deal of conflict in the evidence regarding the agreement made by the appellee for commissions. Mohler himself says he made the agreement with Staum and that the commissions were to be paid whether the loan was ever consummated or not. Cook testified that the commissions should have been paid whether the money was used or not, but he thinks that the agreement for the commissions was finally made by the appellee direct with the appellant. De Crette says that Staum, acting as his agent, made the agreement with the appellee, and no commissions were to be paid if the loan was not actually made, while Staum testified that there was no agreement by or on behalf of the appellant to pay the appellee any commission at all, his version being that the $1,500 was to be paid to him if the loan was made, and he in turn was to divide the money with Cook and the appellee, whereas no commission was to be paid if the loan was not made. In view of these conflicting statements we certainly think it was proper to submit the case to the jury.

The fourth prayer raised the question of the sufficiency of the evidence under the pleadings. We have already held the evidence itself sufficient to go to the jury, and as the prayer fails to set out the points of variance between the evidence and the pleading, we cannot pass upon the sufficiency of the latter. Sec. 9A of article 5 of the Code; *Balto. & O. R. Co. v. Walsh,* 142 Md. 230.

The seventh prayer is identical with the fifth prayer of the defendant in the previous case, and the eighth, ninth and

tenth prayers were also offered in the first trial. For the reasons given in our former opinion we again hold that no error was committed by the court in refusing to grant these prayers. *De Crette v. Mohler, supra.*

The defendant's thirteenth prayer was as follows:

"The court instructs the jury that even if they find from the evidence that John R. M. Staum, J. Stanislaus Cook or Victor I. Cook, or all of them, offered to or agreed with Donald I. Mohler to pay any commissions if the money procured by Mohler was not actually available through the loss of the then pending suit, if the jury so find, then if the jury further find that the said John R. M. Staum, J. Stanislaus Cook or Victor I. Cook further agreed with the said Donald I. Mohler that any sum he received was to be divided among all four of them, if the jury so find; and if they further find that at the time of making such agreement said John R. M. Staum, J. Stanislaus Cook and Victor I. Cook were acting as attorneys for said Paul N. De Crette, then if they further find that this agreement was not communicated in full to the defendant, Paul N. De Crette, their verdict must be for the defendant."

The fourteenth prayer raises the same question and is identical with the thirteenth except that Victor I. Cook is not named in it, and both prayers will therefore be considered together. We think these prayers should have been granted.

It was conceded by both sides that the $1,500 commission was, if paid, to be divided equally between Mohler, Staum and J. S. Cook, and it further appeared that Victor I. Cook would have shared, as a partner, in any commissions received by J. S. Cook. It was also conceded that Staum was the general agent of De Crette in this transaction, that he, together with Cook & Cook, were De Crette's attorneys, and that Cook & Cook were also attorneys for Mohler, the appellee. We have said above that it was proper to submit to the determination of the jury the question of who made the agreement with the appellee for the payment of commissions, and the question of what that agreement actually was. And

since, under the evidence, it was possible for the jury to find that Staum or Cook, or both of them, as agents for De Crette, made the agreement for commissions with Mohler, and it was admitted that the commissions, if paid, were to be divided equally between Mohler, Staum and Cook, it was certainly proper to inquire whether or not De Crette knew that his agents and attorneys were to receive a part of these commissions. Giving the appellee the benefit of all the evidence on this point that the record contains, it cannot be held to show, as a matter of law, that the appellant did know, and we therefore think that the question should have been submitted to the jury.

The principal duty of an agent is loyalty to the interest of his principal. The very nature of the relationship of principal and agent demands that the latter give to the former the fullest measure of service in all matters pertaining to the agency, and that he devote all his skill and ability to securing the greatest legitimate benefit and advantage for his principal. Experience has taught us that no man can serve two masters, and for this reason it has long been an established rule of law that an agent cannot recover from his principal in any transaction in which the agent's interest was antagonistic to that of the principal, unless such interest was fully and fairly disclosed to the principal. *Mechem on Agency* (2nd Ed.), par. 1588 *et seq.*

In accordance with this rule it has been held that, without full disclosure, an agent cannot buy from, or sell to, his principal, that he cannot represent two principals having antagonistic interests, and that he cannot make a secret profit out of any transaction with its principal. *North Baltimore Bldg. Assn. v. Caldwell,* 25 Md. 420; *Schwartze v. Yearly,* 31 Md. 270; *Raisin v. Clark,* 41 Md. 158; *Blake v. Stump,* 73 Md. 160; *Hambleton v. Rhind,* 84 Md. 456; *Owners' Realty Company v. Cook,* 123 Md. 1. The foregoing rule is applied whether or not the interest or profit of the agent causes any loss to the principal. Such transactions are against the policy of the law, and the agent cannot recover

in any of them, unless it is shown that the principal had full knowledge of the agent's interest. *Ruckman v. Bergholz,* 37 N. J. L. 440; *Porter v. Woodruff,* 36 N. J. Eq. 179; *Jansen v. Williams,* 30 Neb. 869, 20 L. R. A. 207; *Mechem on Agency* (2nd Ed.), par. 1198 *et seq.*

And the same rule applies to third persons who deal with an agent. *Smith v. Seattle, L. S. & E. Rwy. Co.,* 72 Hun. 202; *Harrington v. Victoria Graving Dock Co.,* 3 Q. B. D. 549; *Mayor etc. of Salford v. Lever,* 25 Q. B. D. 363; *Mechem on Agency* (2nd Ed.), par. 1728; *Story on Agency,* pars. 210 and 211; 2 *Corpus Juris,* 839.

In *Smith v. Seattle L. S. & E. Rwy. Co., supra,* the plaintiffs sued to recover $150,000 commission from the defendant for services alleged to be rendered in securing a contractor to build a part of the defendant's road. It appeared that the contract for the commission was made with the plaintiffs by an agent of the defendant, and that the plaintiffs had agreed to pay one-third of the commission to this agent. It was held that the plaintiffs could not recover unless the defendant knew of the agent's interest in the commission contract, and in discussing this phase of the case, the learned court (page 208) made the following clear and forceful statement of the legal principles applicable:

"It is an elementary rule of law that if A enters into an executory contract with B through C, the known agent of B, and gives to C, the agent, a secret interest in the contract, A cannot recover damages from B for his failure to perform the contract, unless the latter, with full knowledge of the situation, ratifies the agreement. This rule is founded on the plainest principles of justice. Agents are bound to exercise the utmost good faith towards their principals and cannot lawfully take secret interests in contracts which they are authorized to make. When an agent is employed to sell, he cannot lawfully become the purchaser; or, if he is authorized to buy, he cannot lawfully become a seller. When he violates these rules he commits a fraud on his principal, and whoever gives an agent interest in a contract which he is authorized

to make, becomes a guilty participant in the fraud of the agent, and a contract so entered into is voidable at the election of the principal."

These views are fully sustained by the authorities heretofore cited, and the same authorities further hold that the burden of proving that the principal had full knowledge of the agent's antagonistic interest is upon the party enforcing the contract. See *Smith v. Seattle L. S. & E. Rwy. Co.,* *supra, Jansen v. Williams, supra,* and *Dunne v. English,* L. R. 18 Eq. 524.

In the present case it is admitted that the commission, to be paid for the loan by the appellant, was to be divided between the appellee and the agents of the appellant, and as it does not conclusively appear from the evidence that the appellant knew his agents had this interest in the commission, at the time of his dealings with them, and acquiesced in it, we are of the opinion that the thirteenth and fourteenth prayers of the defendant, which submit the question of knowledge to the jury, should have been granted.

The judgment will accordingly be reversed.

> *Judgment reversed, with costs, and cause remanded for a new trial.*