# BOROWSKI *v.* MEYERS

[No. 94, October Term, 1949.]

*Decided April 19, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Marion A. Figinski* for the appellant.

*Bernard M. Goldstein* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was brought in the Court of Common Pleas of Baltimore City by Louis J. Meyers, trading as Marclay-Oden, Realtors, to recover commission from Mrs. Anna Borowski for the sale of her real property at 2318 Fleet Street and the tavern and restaurant business conducted there under the name of Pete's Harmony Inn. The Court, sitting without a jury, awarded plaintiff $1,850. Defendant has appealed here from the judgment entered upon the verdict.

Defendant and her husband, now deceased, had owned the property as tenants by the entireties. After her husband's death in 1945, her son, Peter Borowski, obtained the liquor license and managed the tavern and restaurant. In 1948, when her son re-entered the United States Army, she decided to offer the place for sale. In November, 1948, plaintiff received a letter announcing it for sale and stating that it could be used as a night club, and that it had possibilities of becoming a favorite eating place of East Baltimore. Plaintiff also received a phone call from defendant, who said that she wanted to retire from the business and asked him to come to discuss the matter. On November 19, 1948, plaintiff and defendant signed an agency contract, by which defendant gave plaintiff the exclusive agency to sell the real estate and business for $32,000. By this contract defendant agreed to pay a commission at Real Estate Board rates "if said realtor produces a customer to purchase said property." The contract contained the words: "guarantee $1,000 week business."

Plaintiff advertised the property for sale, and one of the inquiries came from Irvin K. Johnson, who inspected the property. On December 8 Johnson phoned plaintiff to meet his father-in-law, Frank Kober, Sr., prospective purchaser. Plaintiff accompanied Johnson, Mr. and Mrs. Kober, and Frank Kober, Jr., to the property and there discussed the business and proposed trans-

action. Plaintiff then returned with them to the Kober home, where he drafted a contract for the sale of the property and business for $32,000. The contract, dated December 8, contained the following guarantee: "Sellers guarantee that the business will gross $1,000 per week from the time buyers enter and take possession until settlement date. * * * If business does not gross $1,000 per week buyers may consider this agreement void and get back the deposit." The contract was signed by Mr. and Mrs. Kober, and they gave plaintiff $1,000 in part payment on the property. Plaintiff then submitted the contract to defendant, and it was signed by her.

Defendant was satisfied with all the provisions of the contract except that "she was afraid in case it ran a few dollars less it might be some objection." Plaintiff accordingly drew up another contract in which he substituted for the guarantee of $1,000 per week a guarantee of approximately $1,000 per week. This contract was dated December 12.

After the second contract was signed, Johnson and the Kobers visited the premises several times, and asked defendant to show them her books so that they could check on the volume of business, but she refused. Accordingly Johnson and Frank Kober, Jr., checked the sales on the cash register every day for a week from January 4 to January 10, 1949. They found that the total receipts for the week were only about $517, although defendant, in an effort to attract customers, provided music for the entertainment of the customers. Johnson testified that defendant disputed the correctness of this sum, declaring that the cash register slips showed the receipts to be more than $900. Johnson requested her to produce the slips, and she went to look for them but said she couldn't find them.

The Kobers then asked for return of their $1,000, but plaintiff urged them to be patient. He arranged for a conference on the following day. Plaintiff found from defendant's books that the weekly receipts during the preceding two years averaged only $450. The Kobers

again asked for their $1,000, but plaintiff induced them to offer $27,000 for the property and business without requiring any guarantee as to volume of business, and plaintiff changed his copy of the contract. But defendant refused positively to sell for $27,000. She offered to sell for $28,000, but the Kobers refused to offer more than $27,000. Thus all hope for a sale was definitely abandoned. The Kobers repeated their demand for the return of their $1,000. Plaintiff, who was still holding the $1,000 at the time of the trial, testified: "As agent for Mrs. Borowski I asked her to permit me to give the thousand dollars back. She wouldn't permit me to do that."

The Maryland Code provides that whenever, in the absence of special agreement to the contrary, a real estate broker employed to sell real estate procures in good faith a purchaser, and such purchaser is accepted by the employer and enters into a valid, binding and enforceable written contract of sale in terms acceptable to the employer, and the contract is accepted by the employer and signed by him, the broker shall be deemed to have earned the customary or agreed commission, whether or not the contract entered into be actually into effect, unless the performance of such contract be prevented, hindered or delayed by any act of the broker. Laws of 1910, ch. 178, Code 1939, art. 2, sec. 17.

Thus we hold that where a broker is employed to find a buyer who is able and willing to buy on the terms offered by the owner, the broker is entitled to his commission on performing the service, even though there is a voluntary failure of the owner to complete the transaction. The principal must act in good faith toward the broker, and where the broker has fully performed his part of the contract, procuring a buyer as contemplated, he cannot be deprived of his commission by the fact that the sale has failed of consummation on account of the inability or unwarranted refusal of the principal to consummate the sale according to the prescribed terms. *McKeever v. Washington Heights Realty Corporation*, 183 Md. 216, 37 A. 2d 305. Likewise, after a broker

employed to sell real estate has procured a *bona fide* offer of purchase, which is acceptable to his principal, his right to commission cannot be defeated by the futility of subsequent efforts on the part of the principal to make good a representation of fact by the principal to the broker that was made an essential condition of the sale. For example in *Dotson v. Milliken,* 209 U. S. 237, 28 S. Ct. 489, 491, 52 L. Ed. 768, the broker employed to sell a tract of coal land was allowed his commission because he found a purchaser, although the sale was not made on account of the inaccuracy of the principal's representations to the broker that railroad companies had agreed to build a branch line into the tract. Justice Holmes said in that case: "It was recognized that what the railroads would do was decisive, and it was to be expected that parties thinking of a purchase would require an assurance from them, or something more definite than what the defendant had said. The plaintiff was to go to work at once, and the jury well might find that he was not understood to take the risk of what the railroads might do. The question is between the broker and seller, not between the purchaser and seller. The seller was willing and meant that the broker should accept his confidence as well founded, although he must have known that the purchaser would or might ask more."

On the other hand, a broker is not entitled to commission if he has not completed the undertaking which he assumed. The essence of a brokerage commission is that it is dependent upon success, and that it is not dependent in any way upon the amount of work done by the broker. A brokerage commission is earned if the broker, without devoting much time to hunting up a customer, succeeds in procuring one. But a broker is not entitled to any commission, no matter how much time he devoted to finding a customer, if the customer was not found. A broker who has not been successful in procuring a customer for his principal is not entitled to recover on *quantum meruit* for work done. *Cadigan v. Crabtree,* 179 Mass. 474, 61 N. E. 37, 55 L. R. A. 77, 88

Am. St. Rep. 397. Hence, a broker who negotiates a contract upon the condition that the purchaser may at his option rescind the sale and receive back the price is not entitled to commission for making the sale where the purchaser rescinds the contract, for such a contract is not a binding and enforceable contract acceptable to the employer, within the contemplation of the statute. See *De Crette v. Mohler*, 144 Md. 145, 124 A. 880.

So, where consummation of a sale is dependent upon a condition, the principal's agreement to pay a commission to the broker is dependent upon the stipulated contingency; and if the broker acquiesces in the arrangement, and reasonable and *bona fide* efforts are made by the principal to perform the condition, but the efforts are unsuccessful, the broker is not entitled to a commission. *Copper v. Liberty National Bank of Chicago*, 332 Ill. App. 459, 75 N. E. 2d 769. Thus, in *Kost v. Reilly*, 62 Conn. 57, 24 A. 519, 520, where the owner of a saloon employed a broker to sell the business and agreed to pay the broker a commission if he found a purchaser, the Court held that since the contract contained a provision that "if no license should be granted, there will be no sale," and the transaction was abandoned, the broker was not entitled to any commission. Likewise, in *Krim v. Sacks*, 145 A. 237, 238, 7 N. J. Misc. 318, where the defendant agreed to sell a business to prospective purchasers under a contract conditioned upon the procuring of a lease of the premises from the owner, the Court said that since the broker was conversant with the contract, which provided that if the seller failed to secure the lease he was to return the deposit and the contract was to become void, and since the parties failed to procure the lease, and the purchasers refused to take the business and the transaction was declared at an end, "he must be held to have tacitly acquiesced in the arrangement that there was to be no sale unless the lease could be procured, and, of course, if no sale was made, he was not entitled to any commission for having secured a purchaser."

We specifically hold, in accordance with the decision in New Jersey in *Bell v. Siwoff*, 123 N. J. L. 11, 7 A. 2d 826, Id., 124 N. J. L. 563, 12 A. 2d 881, that a real estate broker, who negotiates a contract for the sale of a place of business upon condition that the buyer has the right to rescind the contract if the gross weekly receipts do not aggregate a certain amount, is not entitled to a commission from the sale where the buyer rescinds the contract because the gross receipts were not as represented.

In the instant case the seller represented that the gross receipts of the business had been aggregating $1,000 a week. Not only the parties to the contract but also the broker understood that the sale was made on condition that if the receipts did not aggregate approximately $1,000 per week during the period of six weeks from the time the buyers took possession until the date for settlement, the buyers could rescind the contract and get back their deposit. The broker drafted this conditional contract. It is clear that the parties intended that the question whether the sale would be consummated should remain open for not more than six weeks. Within that time the contract was rescinded. As the right to a commission depended upon making a sale in accordance with the contract, but no such sale was made, the broker is not entitled to a commission.

For these reasons we must reverse the judgment entered by the trial Court in favor of plaintiff, and enter judgment in favor of defendant.

> *Judgment reversed, and judgment entered in favor of defendant, with costs.*