## THE AMERICAN BONDING COMPANY OF BALTIMORE *vs.* LOUISA ENSEY, Executrix, etc. —SAME *vs.* A. W. CHANDLEE.

*Construction of Letter of Authority—Presumption as to Authenticity of Letters—Authority of Agent to Execute Bond and Agreement to Idemnify.*

A letter to an attorney authorizing him to execute such bonds as may be necessary to effectuate a designated purpose, is not to be strictly construed, but should be liberally interpreted, so as to carry out the intention of the writer as ascertained from the nature of the transaction and the object in view as well as the language employed.

When a party receives a letter in due course purporting to be a reply to one written by him and signed with the name of the person to whom he had written, there is a presumption that it is the authorized letter of that person.

Defendants sent to an attorney in another State, a claim against the firm of H. & M. for collection. This attorney united with another, representing other creditors, in filing a petition in bankruptcy against the firm, of which action defendants were notified. H. & M. were adjudicated bankrupts and the creditors obtained an order directing the Marshal to seize their stock of goods. An attorney at the request of the defendant's agent signed a bond, as attorney for defendants, idemnifying H. & M. on account of the seizure. Subsequently, a party claming to be the vendee of the goods so seized, sued the Marshal for unlawful seizure. He demanded a bond of idemnity stating that otherwise he would apply for authority to surrender the goods. The attorney who had executed the bond then wrote to the defendants and received in

reply an ante-dated letter stating that he was authorized as attorney to execute "any bond that may be necessary to get an order to seize and hold the stock of goods" of H. & M. Thereupon, a bond of indemnity was executed to the Marshal by the said attorney in the name of the defendants and by the other creditors, and by the plaintiff, a bonding company, as surety. All these creditors agreed to idemnify the bonding company from any loss by reason of its becoming such surety. The suit of the vendee of the goods against the Marshal was decided in favor of the former. The Marshal paid the judgment against him aud recovered over against the bonding company, which then brought this action against defendants to recover their proportion of the loss under the bond in pursuance of the agreement to idemnify. *Held,* that the evidence is sufficient to show that the letter empowering the attorney to execute the bond was written by the authority of the defendants.

*Held,* further, that the bond executed, after the seizure of the goods, was necessary in order to hold the same and its execution was authorized by the letter of the defendants, which respected the holding as well as the seizure of the goods.

*Decided February 16th, 1907.*

Appeal from the Superior Court of Baltimore (STOCK-BRIDGE, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER and BURKE, JJ.

*William L. Marbury* and *William L. Rawls* (with whom were *Edward Duffy* and *Carroll T. Bond* on the brief), for the appellant.

*John C. Rose,* for the appellee.

PEARCE J., delivered the opinion of the Court.

The judgments from which these two appeals were taken were rendered in the Superior Court of Baltimore city upon the same cause of action. The original suit was brought against John S. Chandlee, Alexander W. Chandlee, and Lot Ensey, surviving members of a co-partnership trading as the Charles H. Torsch Company, H. P. Chandlee, one of the co-partners having died before the institution of the suit. Subsequently John S.

Chandlee and Lot Ensey died, and by appropriate proceedings a separate suit was docketed against Lot Ensey to which his executrix, Louisa Ensey, appeared, and became the party defendant therein. The original action continued against Alex. W. Chandlee as sole surviving member of the partnership, and the two cases were tried together in the lower Court.

The cause of action arose in this way :

The Charles H. Torsch Company held a claim of $33.34 against Hoyt and Mitchell, a firm doing business at Washington, North Carolina, which claim had sometime before April 14th, 1900, been placed by F. G. Stilley, a salesman of the Charles H. Torsch Company, in the hands of Small & MacLean, attorneys at Washington, North Carolina, with instructions to proceed as they thought advisable. On May 1st, 1900, they advised the Charles H. Torsch Company by letter, that Stilley had done this, and under bankrupt proceedings instituted against Hoyt and Mitchell to set aside an alleged sale of part of their property to one L. R. Mayo, they had been adjudicated bankrupts, and that it was necessary the said Charles H. Torsch Company should prove their claim before May 8th, in order to participate in the appointment of a trustee, and these attorneys requested that this proof be made and be sent to them together with a fee of ten per cent upon the amount of the claim. This letter was replied to by Charles J. Cordrey, who then had charge of the sales and salesmen of the Charles H. Torsch Company, and who proved and sent the claim to Small and MacLean, together with the required fee, but did not inform them that Stilley had no authority with respect to the collection of claims.

At the same time, the O. K. Stove and Range Co., of Louisville, Ky., had a claim of thirteen hundred and thirty four dollars against Hoyt & Mitchell, which was in the hands of B. F. McLean, an attorney at Maxton, N. C., and the Mineralized Rubber Co., of New York also had a claim against them of $165. which was in the hands of Small and MacLean as attorneys. It should be observed here that the McLean of Maxton, was not also the MacLean of Small and MacLean,

the first name of the former being indicated by the initials B. F., while the latter was Angus D., the surnames being differently spelled though pronounced alike.

The proceedings in bankruptcy mentioned above were instituted April 14th, 1900, by the three creditors above named, the petition being signed for the Charles H. Torsch Company by " F. G. Stilley, Agent; " for the O. K. Stove and Range Company by " W. J. Thompson, Agent," and for the Mineralized Rubber Co. by " Angus D. MacLean, agent and attorney." Upon this petition an order was made by the U. S. District Court for the Eastern District of North Carolina on the same day authorizing and requiring the Marshall of said Court " to *seise* and take possession of all the estate real and personal of said Hoyt and Mitchell, and to *hold* and keep the same safely, subject to the further order of the Court." On the same day also a bond in the penalty of $5,000 was given in behalf of the three creditors above named, to Hoyt and Mitchell, with the American Bonding Company as surety, to indemify Hoyt & Mitchell for such damages as they might sustain in event that such seizure should have been wrongfully made. This bond was executed for the O. K. Stove and Range Co. by W. J. Thompson, agent, and for both the Mineralized Rubber Co. and the Charles H. Torsch Co. by B. F. McLean, as attorney, it appearing in the deposition of B. F. McLean that he so signed in accordance with the request and authority of Small and MacLean, as B. F. McLean was to go to Raleigh to institute the proceedings.

Subsequently, B. F. McLean was again in Raleigh, when the U. S. Marshal, H. C. Dockery, informed him that his authority to sign that bond was questioned, and that Mayo was claiming the stock of goods seized, and that unless he, Dockery, was properly assured of McLean's authority in the premises, and was furnished with a bond of indemnity to himself as respected the seizure of the property, he would go to the Judge and ask an order releasing the property claimed by Mayo. He replied that, "he would at once write the parties for proper authority, or rather a letter authorizing him to sign

these bonds, and would ask them to date it back so as to cover both bonds, that he wrote these letters from the Yarborough House in Raleigh and consequently had no copy of either of them," but that he received in reply a letter from the Charles H. Torsch Co. upon their letter head as follows:

"Baltimore April 12th 1900.

Mr. B. F. McLean, Atty at Law,
            Maxton N. C.

Dear Sir

You are hereby authorized to sign any affidavit as our attorney, and execute for us as attorney any bond that may be necessary to get an order to seise and hold the stock of goods, wares and merchandise of Hoyt and Mitchell whom we are informed are bankrupts.

Yours very respectfully
            The Charles H. Torsch Company."

Neilson Ramsay, who succeeded Charles J. Cordrey in the charge of the credits and salesmen of The Charles H. Torsch Company says that this letter was written by Cordrey while with that company one year before his own connection with that company, though he says that he was not very familiar with his handwriting.

Similar replies were received to this letter from Raleigh from the Stove and Range Co. and from the Rubber Co. both dated back as requested to April 12th, 1900, the former authorizing W. J. Thompson "to make any affidavits necessary, and to sign in our name any bond that may be requred in the proceedings," and the latter authorizing B. F. McLean "to execute for us as our attorney any *bonds* that may be necessary to get an order to seize and hold the stock of goods, wares and merchandise of Hoyt and Mitchell, of Washington, N. C. whom we are informed are bankrupt." It will be noticed that the language of the authority of the Rubber Co. is the precise language of the authority of The Charles H. Torsch Co. except that in the former the plural word "bonds" is used, and in the latter, the word "bond" is used, and so also as to the words "affidavits," and "affidavit." This difference is not material in any aspect of the case, and is perhaps a

typographical error in one of these letters, but the identity of language strongly indicates that they were prepared by B. F. McLean for the signatures of the parties, and thus reflects the purpose of the writer declared in his testimony "to cover both bonds." Indeed, the dating back to April 12th, whether actually written by McLean, or by the parties at his request, in itself indicates the purpose to cover the first bond, and the reference to both *seizing and holding* the property, by strong implication points to the second bond demanded by the Marshal, since for the purposes of those parties *seizure* would or might be futile unless the property were also *held*.

In pursuance of these letters, on June 16th, 1900, B. F. McLean and Small and MacLean as attorneys for these parties made application to the American Bonding Co. of Baltimore through its agent at Raleigh, for a bond of $8,000 for the protection of the Marshal of the Court by reason of the seizure and holding of said property, and signed in their behalf an agreement for the same in which it was stipulated that they should indemnify the Bonding Co. against all loss or damage which it might be put to in consequence of the execution of said bond; and on the same day the bond was executed to said Dockery as Marshal to indemnify him from all harm "or actions that have been or may be brought against him by reason of the seizure and holding of said property." Mayo sued Dockery for the seizure of said property and recovered judgment against him for $6,670 which Dockery succeeded in satisfying by payment of $5,019, and he then sued the Bonding Co. upon said bond and recovered judgment against it for $4,619.17, which judgment the Bonding Co. satisfied by payment of $4,715 and costs aggregating $5,077. The O. K. Stove and Range Co. and the Rubber Co. settled with the Bonding Co. their respective one-third of this amount, and the present suit was brought upon the agreement before mentioned to recover the one-third claimed to be due from the Charles H. Torsch Co.

After the institution of the suit by Mayo against Dockery, the latter informed the Bonding Co. by letter of its pendency,

and that he was defending the same to the best of his ability, and requested the Bonding Co. and the creditors upon whose application the bond was executed, to aid in defense of the suit, and notified them that in event of a recovery by Mayo against him, he should look to the parties to the bond of indemnity to reimburse him without further proof of the breach of the bond than the recovery of judgment thereon.

Dockery said he received in due course of mail a letter written upon the printed letter heads of the Charles H. Torsch Co. dated May 16th, 1901, and signed "The Charles H. Torsch Co. per Neilson Ramsay," stating they had recently learned he was apprehensive of loss in connection with the seizure of goods of Hoyt & Mitchell, and asking him to inform them of the ground of his fears and what course he would advise them to pursue to protect their interests, adding : " We supplied you with a bond at the time the goods were seized." Dockery further said that the only bond supplied him by the Charles H. Torsch Co. or by any one in their behalf, was the bond for $8,000 before mentioned.

Ramsay identified this letter as written by him. He said that in May, 1901, he was called to the office of the American Bonding Co. to see Mr. Abrahams who was in its employment, and that he had never before heard of any bond in connection with this matter, or of Hoyt and Mitchell or Dockery in any connection ; that Abrahams told him that the Charles H. Torsch Co. were on a bond to a man named Dockery in some bankruptcy proceedings, so he went back and looked up the correspondence ; that he found in the letter book the letter of April 12th, 1900, which he showed Abrahams and asked him, " Are we on this bond ? " and that Abrahams replied, " Yes, you are on it hard and fast," and that he wrote the letter of May 16th, 1901, at Abrahams request or suggestion. He said the firm was supposed to have proper employees, and they wrote letters for the firm and no one supervised them, and that this course of business included his department. He also said he never heard until sometime after writing that letter that two bonds had been given in this matter.

Abrahams said that he knew of the bond to Dockery and produced the application for it, which was made while he was in the employment of the Bonding Company, and that this matter was in his department and the execution of the bond was reported to him.    The application was objected to on the ground that B. F. McLean had no authority to sign it, but it was admitted subject to exception if not followed up by proof of such authority.

He said that at this interview with Ramsay he showed him the entire file of the company relating to that matter, and that file did not cover the bond to Hoyt and Mitchell, but he was not clear whether he showed Ramsay that bond, or whether he told him there were two bonds given in the matter, but said the interview with Ramsay, had to do with the bond referred to in Dockery's letter of December 10th, 1900, in which he stated his apprehension of loss, and which letter was then shown to Ramsay.    He also denied that he suggested to Ramsay to write the letter of May 16th, 1901.

Wm. T. Donaldson, an attorney in charge of the loss and claim department of the Bonding Co., said that as soon as suit was entered by Dockery upon the bond, he wrote the Charles H. Torsch Co. notifying them of that fact, and they then sent a Mr. Carnan to take charge of the matter, who was present at the trial in Raleigh, and as the witness was informed by wire, consented to the entry of judgment in the case against the Bonding Co., which was the only defendant summoned.

Charles J. Cordrey said that he sent Small and MacLean a statement of the claim of the Charles H. Torsch Co. for collection which was in the line of his duty, as the person in charge of the sales and salesmen, as was the correspondence with attorneys in charge of claims for collection ; that he would instruct the lawyers to bring suits and to sue out ordinary attachments when it was necessary to seize goods, but that he was not authorised to sign a firm bond, or to give any one else authority to do so.    This witness was not asked whether he signed the letter dated April 12th, 1900, and did not deny doing so in express terms, nor in any other manner

than may be sought to be implied in his general denial that he ever authorised any one to execute a firm bond.

Neither the bond to Dockery, nor the application therefor, and the agreement annexed to the application, upon which agreement this suit is brought, are sealed instruments.

The above condensation of the testimony of the plaintiff, we have thought necessary to state at considerable length in order to a clear understanding of the case, since at the close of plaintiff's testimony, the Court, at the request of the defendant instructed the jury " that there was no evidence legally sufficient upon the pleadings to entitle the plaintiff to recover, and their verdict must be for the defendant."

In order to maintain this action at that stage of the case, it was only necessary that the plaintiff should produce some legally sufficient evidence tending to show that B. F. McLean was constituted the agent of the Charles H. Torsch Co. with authority to execute the agreement sued on, and the bond to Dockery executed the same day.   As neither the bond, nor the application therefor and the annexed agreement, were under seal, there is no question presented as to the power of an agent to execute a sealed instrument.

The plaintiff's case rests upon the letter dated April 12th, 1900, purporting to be the letter of the Charles H. Torsch Co. which has been transcribed in the foregoing statement of the testimony and in which all the material circumstances attending and leading up to its writing have been recited. · Before this letter was written, the Charles H. Torsch Co. had been informed by Small and MacLean's letter to them of May 1st, 1900, that their salesman, Stilley, had placed this claim in their hands for collection; that bankruptcy proceedings had been instituted thereon and that Hoyt and Mitchell had been adjudicated bankrupts. The Charles H. Torsch Co. had thereupon, in compliance with the request contained in that letter, made proof of their claim and sent this proof together with the required fee to said attorneys.   They were therefore fully advised of the situation, and must be presumed to have known as business men that in such proceedings bonds may

be required to justify the summary seizure and continued holding of property against all persons claiming the ownership thereof.

The letter of B. F. McLean to them from Raleigh is not in evidence nor was its exact date given, but it is plain that this was sometime between May 1st, 1900, and June 16th, 1900, when the agreement in suit, and the bond to Dockery were executed, and it is clear, from the testimony of B. F. McLean that they were advised by that letter of the fact that McLean's authority to execute the bond to Hoyt and Mitchell had been questioned, and that Dockery demanded a bond for his protection, with proof of McLean's authority to execute it, and that unless his demand was complied with, he would apply to the Court for an order to release the stock of goods he had seized. The letter is dated back to April 12th, which could only have been by pre-arrangement, and could have been for no other purpose than to approve the execution of the bond to Hoyt and Mitchell which was dated April 14th, 1900; but this fact does not limit the authority of the letter to that bond as is contended by the appellee, nor can its authority be so limited merely because it refers to such bond as may be necessary *"to get* an order to seize and hold the stock of goods," &c. *That order* had already been *gotten.* The thing required then was a bond to prevent the *rescission* of that order, to *keep* it in force, to continue the *holding* originally authorized by that order, and without which the security of the plaintiffs for their claim would be destroyed. If that letter had been dated as of the day when it was actually written, its form being unchanged, it could not be doubted that it would be taken to authorize the execution of any letter necessary to *hold* the property *previously seized,* and this inference cannot be destroyed by the mere fact that the letter was dated back so as to cover a bond previously executed, but not alone sufficient to ensure the benefit of the order to seize and hold. The whole tenor of the correspondence evinces the intention of the Charles H. Torsch Co. to give a free hand to McLean in executing any bond necessary to preserve the *status quo.* The contention of the ap-

pellee is that this letter must receive the same strict and rigid construction ordinarily given to formal powers of attorney or to bonds where the liability of sureties thereon is involved. But such is not the rule. The true rule is stated in 1 *Clark and Skyles on Agency*, p. 515, thus: "A formal instrument delegating power is ordinarily subjected to strict interpretation, and the authority is not extended beyond that given in terms, or which is necessary to carry into effect that which is expressly given. They are not subject to that liberal interpretation which is given to less formal instruments, as letters of instruction, &c., in commercial transactions, which are interpreted most strongly against the writer, especially when they are susceptible of two interpretations, and the agent has acted in good faith upon one of these interpretations." This passage is quoted by the authors from an opinion of JUDGE ALLEN in *Craighead* v. *Peterson*, 72 N. Y. 284, citing *Wood* v. *Goodridge*, 6 Cush. 117. The same authors on pp. 516, 517, say, "The guiding principle in the construction of powers is to be derived from a consideration of the result which the agent or depositary of power is appointed to accomplish. When a Court is called on to construe a written authority its first duty is to ascertain what intention or purpose the principal had in view when he gave the authority to the agent, and when that has been ascertained the power is to be construed so as to effect that purpose, if possible, instead of defeating it. In conformity with such purpose or intent, a general power may be limited, or a limited power made general." And again on p. 518. "In order to arrive at the intention of the parties, and to interpret the scope and meaning of the power, the Court may receive evidence as to the relative positions of the parties, their obvious design as to the objects to be accomplished, and the nature of the business or transaction in which the principal was engaged."

This Court, even in the consideration of formal instruments, has recognized the correctness of these principles, as in *State use of Ranstead* v. *Banks*, 48 Md. 520, and in *Posner* v. *Bayless*, 59 Md. 60, where JUDGE MILLER said : " The rule that the

authority conferred by a letter of attorney must be strictly pursued, cannot override the general and cardinal rule that the intention of the party creating the power must prevail in its construction, and such intention is to be ascertained from the language employed and the object to be accomplished. The instrument must moreover be read in the light of such surrounding circumstances as Courts always consider when called upon to construe any written contract."

The application of these principles is well illustrated in numerous decisions, among which may be mentioned as especially in point: *Commonwealth* v. *Hawkins*, 83 Ky. 250 and 251, and *Holladay* v. *Daily*, 19 Wall. 610, in which Mr. Justice Field spoke of the rule as to the discovery and carrying out of the intent of the grantor of the power, as of " equal potency " with the general rule as to strict construction.

When it is remembered that this letter appears to have been either written or dictated by B. F. McLean himself and his language to have been adopted by the principal in signing the letter, the conclusion becomes almost irresistible that in adopting the language the principal also intended to adopt the purpose for which the testimony of McLean shows he used the language employed.

We cannot doubt that this letter was ample authority for the execution of the bond given to Dockery.

It still remained however for the plaintiff to produce testimony legally sufficient and tending to show that the letter was written under the authority of the Charles H. Torsch Co.

McLean testified that it came to him in due course of mail. It was written upon the letter head of that company and was signed in their name. Ramsay said that the name of the company was signed by Cordrey who then had charge of such matters. While Cordrey did not expressly deny his signature, it may be said he did so by implication, but whether he did or did not sign, it was a question for the jury. Even if it were shown, or could be assumed, he did not sign it, there is no evidence to show that the person who did sign it was not authorized to do so. In such a situation the rule appears to be well settled.

In 22 *Enc. of Law*, 2 ed. p. 1256, the rule is thus stated : "The rule has been announced and recognized in numerous cases that where a letter has been received by the due course of mail in answer to a prior letter of the receiver, with the name of the addressee of such prior letter signed thereto, a presumption arises that it is the letter of the person whose name is signed thereto." Numerous cases are cited which support this statement of the rule. In *Weeks* v. *Barron*, 38 Vt. 424, where the question arose, the Court briefly said, "It is not necessary to put the admissibility of the letter on the authority of the clerk to bind the defendant. It is sufficient for that purpose that it was in answer to a letter addressed to the defendant, and that the other testimony in the case furnished ground for an argument that the letter, though written by a clerk in the defendant's employment was in fact the act of the defendant and directed by him." The rule is recognised in *Scofield* v. *Parlin and Orendorff*, 61 Fed. Rep. 804, by JUDGE WOODS who held that letters similarly introduced "should have gone to the jury, and in the absence of contrary evidence should have been accepted as conclusive of the execution of the contract by the defendant." In *C. B. & Q. R. R.* v. *Roberts*, 10 Col. App. 91, objection was made to the receipt in evidence of a letter purporting to come from the Railroad Company and signed E. Hanson, Claim Agent, on the ground that it was not shown to have been written under the authority of the Railroad Company ; but the Court said : "The letter was received in answer to one addressed to the claim agent of the company. The presumption from that fact is that the author of the letter represented the company. We certainly cannot presume that some stranger, surreptitiously or otherwise, got possession of the letter of the plaintiff and answered it. From its appearance, its contents, and the circumstances under which it was received, it would be accepted by any person accustomed to correspondence, and acquainted with the methods by which business is transacted, as being a response of the defendant's authorized agent to the letter which was addressed to him."

The presumption of authenticity and of representation spoken of in these cases is in full force here, uncontradicted and unquestioned, and must prevail to take the case to the jury.

The view which we take of the case renders it unnecessary to consider the queston of ratification argued at the hearing, and for the reasons stated the judgment will be reversed.

> *Judgment reversed with costs above and below, and new trial awarded in each case.*