492 A.2d 608

**Arthur V. KING**

v.

**Howard R. BANKERD.**

**No. 150, Sept. Term, 1983.**

Court of Appeals of Maryland.

May 27, 1985.

John E. Clapp, Rockville, for appellant.

Cleopatra Campbell, Frederick, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, DA-VIDSON,* RODOWSKY and COUCH, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), specially assigned.

---

* Davidson, J., participated in the hearing and in the conference of the case in regard to its decision, but died prior to the adoption of the opinion by the Court.

COLE, Judge.

The single issue presented in this case is whether a power of attorney authorizing the agent to "convey, grant, bargain and/or sell" the principal's property authorizes the agent to make a gratuitous transfer of that property.

The facts are uncomplicated. Howard R. Bankerd (Bankerd) and his wife, Virginia, owned, as tenants by the entirety, a home in Montgomery County, Maryland. They resided there until 1966 when Mrs. Bankerd moved out as a result of marital problems. Bankerd continued to live at the property until July 1968, when he "left for the west." Mrs. Bankerd thereupon resumed residency of the property. For the ensuing twelve years, Bankerd lived at various locations in Nevada, Colorado, and Washington, and he made no payments on the mortgage, for taxes, or for the maintenance and upkeep of the home.

Before Bankerd's departure, he executed a power of attorney to Arthur V. King, an attorney with whom he was acquainted. From 1971 to 1974, Bankerd did not communicate or correspond with King in any manner. In 1975, however, King sent Bankerd a letter enclosing an updated power of attorney because the Washington Suburban Sanitary Commission was about to put a sewer adjacent to the subject property, and King believed the new power would be beneficial. This power of attorney, which is the center of the instant litigation, was executed by Bankerd and returned to King. Dated October 30, 1975, this power of attorney provides:

KNOW ALL MEN BY THESE PRESENTS, that I, Howard R. Bankerd, hereby make, constitute and appoint ARTHUR V. KING, my attorney for me, and in my name to convey, grant, bargain and/or sell the property designated in the Montgomery County land record as Lot 9 of an unrecorded subdivision as recorded in Liber 3027 at folio 293, situated at 14026 Travilah Road, Rockville, Maryland on such terms as to him may seem best, and in

my name, to make, execute, acknowledge and deliver, good and sufficient deeds and conveyances for the same with or without covenants and warranties and generally to do and perform all things necessary pertaining to the future transfer of said property, and generally to do everything whatsoever necessary pertaining to the said property.

After granting this power of attorney, Bankerd had no further communication with King until 1978.

Mrs. Bankerd, who as noted above had been residing at and maintaining the subject property since 1968, requested King in September 1977 to exercise the power of attorney and to transfer Bankerd's interest in the property to her. King was aware that Mrs. Bankerd was nearing retirement and that she was "saddled" with a property she could neither sell nor mortgage. Consequently, King attempted to locate Bankerd. King wrote to Bankerd on at least two occasions at a Carson City, Nevada hotel where Bankerd had been living. Only one letter was returned. King sent a third letter to Bankerd to another Carson City address, but that letter was also returned. King also made several other efforts, albeit unsuccessful, to obtain Bankerd's address.

Mrs. Bankerd informed King that her husband had once attempted to give the property away to a neighbor on the condition that the neighbor assume the mortgage payments. Consequently, King asserted that he believed Bankerd "didn't give a damn" about the property, that Bankerd had abandoned his interest in the property, and that given Bankerd's age (approximately sixty-nine years), King believed that Bankerd might even be deceased. King therefore conveyed Bankerd's interest in the property to Mrs. Bankerd by deed dated June 21, 1978. Mrs. Bankerd paid no consideration for the transfer and King received no compensation for the conveyance on behalf of Bankerd. Mrs. Bankerd thereafter sold the property to a third party for $62,500.

In 1981 Bankerd filed suit against King in the Circuit Court for Montgomery County alleging breach of trust and breach of fiduciary duty in King's conveyance of Bankerd's interest in the subject property in violation of the power of attorney. After the completion of the discovery proceedings each party moved for summary judgment. On August 12, 1982, the trial court granted summary judgment to Bankerd against King and awarded $13,555.05 in damages on the basis that King had negligently violated the fiduciary relationship that existed between those two parties. The Court of Special Appeals affirmed, holding that the broad language of the power of attorney did not authorize the conveyance without consideration in favor of Bankerd. *King v. Bankerd,* 55 Md.App. 619, 465 A.2d 1181 (1983).[1] We granted King's petition for certiorari to consider the issue of first impression presented in this case.

I

King basically contends that the language contained in a document granting a broad power of attorney be viewed in light of the surrounding circumstances to determine whether the attorney in fact had authority to transfer the property without consideration. Based on this contention, King concludes that the second power of attorney did not as a matter of law preclude him from gratuitously transferring Bankerd's property. We disagree.

Similar to other jurisdictions, Maryland appellate courts have had relatively few occasions to analyze powers of attorney. Because we last addressed the substantive law relating to powers of attorney over a half century ago, *see Kaminski v. Wladerek,* 149 Md. 548, 131 A. 810 (1926), we

---

1. The Court of Special Appeals also rejected King's argument that Bankerd had abandoned his interest in the subject property and that summary judgment should have been denied on the basis of equitable estoppel.

shall review the relevant rules relating to powers of attorney again.[2]

Broadly defined, a power of attorney is a written document by which one party, as principal, appoints another as agent (attorney in fact) and confers upon the latter the authority to perform certain specified acts or kinds of acts on behalf of the principal. *See* 3 Am.Jr.2d *Agency* § 23, at 433 (1962); *see also Long v. Schull,* 184 Conn. 252, 256, 439 A.2d 975, 977 (1981) (per curiam); *Realty Growth Investors v. Council of Unit Owners,* 453 A.2d 450, 454 (Del.1982); *Bank of America, National Trust & Savings Association v. Horowytz,* 104 N.J.Super. 35, 38, 248 A.2d 446, 448 (1968); *Cabarrus Bank & Trust Co. v. Chandler,* 63 N.C.App. 724, 726, 306 S.E.2d 184, 185 (1983), *review denied,* 311 N.C. 303, 317 S.E.2d 679 (1984). This instrument, which delineates the extent of the agent's authority, is a contract of agency that creates a principal-agent relationship. *See Long v. Schull, supra,* 184 Conn. at 256, 439 A.2d at 977; Restatement (Second) of Agency §§ 1, 34 (1958) [hereinafter cited as Restatement].

Various rules govern the interpretation of powers of attorney. As Chief Judge Murphy observed for this Court in *Klein v. Weiss,* 284 Md. 36, 61, 395 A.2d 126, 140 (1978), one "well settled" rule is that powers of attorney are "strictly construed as a general rule and [are] held to grant only those powers which are clearly delineated[.]" Although our predecessors recognized this rule over a century ago in *Posner v. Bayless,* 59 Md. 56 (1882), they were careful to note that the rule of strict construction "cannot override the general and cardinal rule" that the court determine the intention of the parties. *Id.* at 60. To ascertain this intent, the *Posner* Court emphasized that the language used in the instrument and the object to be accomplished be viewed in light of the surrounding circumstances. *See also Kaminski v. Wladerek, supra,* 149 Md.

---

2. In this regard we note that Md.Code (1981 Repl.Vol.), § 4–107 of the Real Property Article, which requires that an agent's authority to grant property be executed in the same manner as a deed, is not at issue here.

at 557–58, 131 A. at 813–14 (reiterating principles); *American Bonding Co. v. Ensey,* 105 Md. 211, 220–22, 65 A. 921, 925 (1907) (same). Other courts of last resort have likewise embraced the rule of strict construction of powers of attorney. *See, e.g., Aiello v. Clark,* 680 P.2d 1162, 1166 (Alaska 1984); *Fierst v. Commonwealth Land Title Insurance Co.,* 499 Pa. 68, 74, 451 A.2d 674, 677 (1982). *See generally* Comment, *Construction of Written Powers of Attorney,* 18 Ohio St. L.J. 129, 130 (1957) (indicating that American courts follow the strict construction principle).

 Another accepted rule of construction is to discount or disregard, as meaningless verbiage, all-embracing expressions found in powers of attorney. Restatement, *supra,* § 34 comment h; *see Von Wedel v. Clark,* 84 F.Supp. 299, 300 (D.N.J.1949); *Mercantile Trust Co. v. Harper,* 622 S.W.2d 345, 349 (Mo.Ct.App.1981). Because powers of attorney are ordinarily very carefully drafted and scrutinized, courts give the terms used a technical rather than a popular meaning. Restatement, *supra,* § 34 comment h. In addition, ambiguities in an instrument are resolved against the party who made it or caused it to be made, because that party had the better opportunity to understand and explain his meaning. *Id.; see Truck Insurance Exchange v. Marks Rentals, Inc.,* 288 Md. 428, 435, 418 A.2d 1187, 1191 (1980) (ambiguity in an instrument resolved against party responsible for drafting it, absent evidence indicating the intention of the parties). Finally, general words used in an instrument are restricted by the context in which they are used, and are construed accordingly. *See Aiello v. Clark, supra,* 680 P.2d at 1166 (quoting *Gouldy v. Metcalf,* 75 Tex. 455, 458, 12 S.W. 830, 831 (1889)).

 In accordance with these principles, nearly every jurisdiction that has considered the issue in the case *sub judice* has concluded that a general power of attorney authorizing an agent to sell and convey property, although it authorizes him to sell for such price and on such terms as to him shall seem proper, implies a sale for the principal's

benefit. Such a power of attorney, however, does not authorize the agent to make a gift of the property, or to convey or transfer it without a present consideration inuring to the principal. *See, e.g., Von Wedel v. McGrath,* 180 F.2d 716, 718–19 (3d Cir.), *cert. denied,* 340 U.S. 816, 71 S.Ct. 45, 95 L.Ed. 600 (1950); *Von Wedel v. Clark, supra,* 84 F.Supp. at 300; *Aiello v. Clark, supra,* 680 P.2d at 1165–67; *Shields v. Shields,* 200 Cal.App.2d 99, 101, 19 Cal.Rptr. 129, 130–31 (1962); *Johnson v. Fraccacreta,* 348 So.2d 570, 572 (Fla.Dist.Ct.App.1977); *Baldwin v. Loesel,* 333 Pa. 26, 30, 3 A.2d 389, 391 (1939); *Montgomery v. Nevins,* 270 S.W.2d 427, 430 (Tex.Civ.App.1954); *Huntsman v. Huntsman,* 56 Utah 609, 613–14, 192 P. 368, 369–71 (1920); Annot., 73 A.L.R. 884, 884 (1931); *accord Fujino v. Clark,* 71 F.Supp. 1, 4 (D. Hawaii 1947), *aff'd,* 172 F.2d 384 (9th Cir.), *cert. denied,* 337 U.S. 937, 69 S.Ct. 1512, 93 L.Ed. 1743 (1949); *Bertelsen v. Bertelson,* 49 Cal.App.2d 479, 484, 122 P.2d 130, 133 (1942); *Hodges v. Surratt,* 366 So.2d 768, 773–74 (Fla.Dist.Ct.App.1978), *cert. denied,* 376 So.2d 76 (Fla.1979); *Thompson v. Thompson,* 190 Ga. 264, 264, 9 S.E.2d 80, 83 (1940); *Mercantile Trust Co. v. Harper, supra,* 622 S.W.2d at 349–50; *Manna v. Pirozzi,* 44 N.J.Super. 227, 230–31, 130 A.2d 55, 57 (1957); *In re Estate of Iannone,* 431 N.Y.S.2d 904, 905, 104 Misc.2d 5, 6 (1980); *Gaughan v. Nickoloff,* 214 N.Y.S.2d 487, 489–90, 28 Misc.2d 555, 557–58 (1961); *In re Estate of Rolater,* 542 P.2d 219, 223–24 (Okla.Ct.App.1975); *Brown v. Laird,* 134 Or. 150, 155–57, 291 P. 352, 354–55 (1930); *Creasy v. Henderson,* 210 Va. 744, 748–49, 173 S.E.2d 823, 827–28 (1970); Conrad, Seavey & Siegel, *Agency, Associations, Employment, Licensing and Partnership* 269 (1977).

■ For the reasons below, we conclude that an agent holding a broad power of attorney lacks the power to make a gift of the principal's property, unless that power (1) is expressly conferred, (2) arises as a necessary implication from the conferred powers, or (3) is clearly intended by the parties, as evidenced by the surrounding facts and circumstances.

First, the power to make a gift of the principal's property is a power that is potentially hazardous to the principal's interests. Consequently, this power will not be lightly inferred from broad, all-encompassing grants of power to the agent. Accordingly, "the agent must be circumspect with regard to the powers created—or the lack of them." *Mercantile Trust Co. v. Harper, supra,* 622 S.W.2d at 350.

■ Second, the main duty of an agent is loyalty to the interest of his principal. *See Nagel v. Todd,* 185 Md. 512, 516–17, 45 A.2d 326, 328 (1946) (quoting *DeCrette v. Mohler,* 147 Md. 108, 115, 127 A. 639, 642 (1925)); Restatement, *supra,* § 39 ("Unless otherwise agreed, authority to act as agent includes only authority to act for the benefit of the principal."); *id.* § 387 ("Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency."). Thus, in exercising granted powers under a power of attorney, the attorney in fact is bound to act for the benefit of his principal and must avoid where possible that which is detrimental unless expressly authorized. *See In re Estate of Rolater, supra,* 542 P.2d at 223. We recognized these principles well over a century ago in *Adams Express Co. v. Trego,* 35 Md. 47 (1872), where our predecessors quoted Judge Story's treatise on agency:

> Even if a general discretion is vested in the agent, it is not deemed to be unlimited. But it must be exercised in a reasonable manner, and cannot be resorted to in order to justify acts, which the principal could not be presumed to intend, or which would defeat, and not promote, the apparent end or purpose, for which the power was given.

*Id.* at 66–67 (quotation marks omitted). The *Adams Express* Court continued:

> [I]t is a universal principle in the law of agency, that the powers of the agent are to be exercised for the benefit of the principal *only, and not of the agent or of third parties.* A power to do all acts that the principal could do, or all acts of a certain description, for and in the name of the principal, is limited to the doing of them for the use

and benefit of the principal only, *as much as if it were so expressed.*

*Id.* at 67 (quotation marks omitted; emphasis in the original). Later, in *Nagel v. Todd, supra,* this Court explained that the principal-agent relationship demands that the agent give to the principal " 'the fullest measure of service in all matters pertaining to the agency, and that he devote all his skill and ability to securing the greatest legitimate benefit and advantage for his principal.' " *Nagel v. Todd, supra,* 184 Md. at 516, 45 A.2d at 328 (quoting *DeCrette v. Mohler, supra,* 147 Md. at 115, 127 A. at 642). In light of the duties of loyalty that arise from the fiduciary relation, it is difficult to imagine how a gift of the principal's real property would be to the benefit of the principal when the power of attorney does not authorize such a gift or the principal does not intend to authorize such a gift. In short, the agent is under a duty to serve his principal with only his principal's purposes in mind.

Third, "[i]t would be most unusual for an owner of property to grant a power of attorney authorizing the attorney in fact to give his property away. If a person has decided to make a gift of property, he or she usually decides as to who is going to be the donee." *Gaughan v. Nickoloff, supra,* 214 N.Y.S.2d at 490, 28 Misc.2d at 557.

A brief review of several cases that have applied these principles is instructive. For example, in *Johnson v. Fraccacreta, supra,* Carmella Fraccacreta owned the subject property at the time she executed a power of attorney appointing her daughter, Delores, as her attorney in fact. The power of attorney authorized Delores to "[b]argain, sell, release, convey and mortgage lands ... upon such terms and conditions, and under such covenants, as she shall think fit[.]" Delores then conveyed Carmella's property to Carmella and her husband Paolo, as tenants by the entireties. This conveyance constituted a gift to Paolo of a portion of Carmella's property by virtue of the creation of an estate by entireties with the right of survivorship. Despite these broad powers, the *Johnson* court held that they

did not "expressly or impliedly indicate an intention to authorize a gift of the principal's property." *Id.* at 572.

In another case involving a power of attorney that authorized the attorney in fact to "sell, exchange, grant or convey" the principal's real property for the latter's benefit, the court held that this language did not authorize a conveyance as a gift or without a substantial consideration. *See Shields v. Shields, supra,* 200 Cal.App.2d at 100–01, 19 Cal.Rptr. at 130–31. Similarly, a general power of attorney authorizing an agent to "sell and convey" real property does not authorize him to make a gift of the property. *See Baldwin v. Baldwin, supra,* 333 Pa. at 30, 3 A.2d at 391. In the words of the *Baldwin* court, "[t]he authorities are unanimous as to this." *Id.*[3]

## II

## A.

▮▮▮▮ This case is before us on summary judgment. In reviewing the grant or denial of a motion for summary

---

**3.** King's reliance upon *Collins v. Streitz,* 95 F.2d 430 (9th Cir.), *cert. denied,* 305 U.S. 608, 59 S.Ct. 67, 83 L.Ed. 387 (1938), and *Ortman v. Streeter,* 67 R.I. 325, 23 A.2d 189 (1941), is misplaced. Contrary to King's view, Collins does not state that an attorney in fact can never make a gift of the principal's property. Indeed, Collins clearly reinforces the view that an attorney in fact can make such a gift when expressly authorized to do so by the principal. King's reliance upon Ortman fares no better. Although that court remarked that "[t]he words 'grant', 'convey', 'assign and deliver' ... are certainly broad enough to include a conveyance by way of gift as well as by way of sale[.]" *id.* at 326, 23 A.2d at 191, this remark was obviously made in the context of effectuating the testatrix's intent.

King also asks us to discount as "inherently suspect" the legal precepts set forth in *Fujino v. Clark,* 71 F.Supp. 1 (D.Hawaii 1947), *aff'd,* 172 F.2d 384 (9th Cir.), *cert. denied,* 337 U.S. 937, 69 S.Ct. 1512, 93 L.Ed. 1743 (1949). We decline to do so. Fujino simply held that attorneys in fact cannot make a gift of the principal's property when they lack the express or implied power to do so. That the property was subsequently seized by the federal government during World War II on the basis that the principal, a Japanese citizen, was the beneficial owner of the property, and that the donee, a United States citizen, was controlled by the principal, does not disturb the basic rationale underlying that holding.

judgment, we are concerned primarily with deciding whether a material factual issue exists, and in this regard, all inferences are resolved against the moving party. *Lynx, Inc. v. Ordnance Products, Inc.,* 273 Md. 1, 7–8, 327 A.2d 502, 509 (1974); *Salisbury Beauty Schools v. State Board of Cosmetologists,* 268 Md. 32, 40–41, 300 A.2d 367, 374 (1973); *see Natural Design, Inc. v. Rouse Co.,* 302 Md. 47, 62, 485 A.2d 663, 671 (1984). If there is a conflict between the inferences that may be drawn from that before the court, summary judgment is not proper. As Judge Smith explained in *Porter v. General Boiler Casing Co.,* 284 Md. 402, 413, 396 A.2d 1090, 1096 (1979) (quoting *Fenwick Motor Co. v. Fenwick,* 258 Md. 134, 138, 265 A.2d 256, 258 (1970), " 'even where the underlying facts are undisputed, if those facts are susceptible of more than one permissible inference, the choice between those inferences should not be made as a matter of law, but should be submitted to the trier of fact.' "

Under former Md.Rule 610 (now Md.Rule 2–501), when the pleadings, depositions, admissions on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law, then the judgment sought shall be rendered forthwith. *Coffey v. Derby Steel Co.,* 291 Md. 241, 246, 434 A.2d 564, 567 (1981). A material fact is a fact the resolution of which will somehow affect the outcome of the case. *Lynx, Inc. v. Ordnance Products, Inc., supra,* 273 Md. at 8, 327 A.2d at 509. Consequently, a dispute over a non-material fact will not preclude summary judgment.

Credibility, we note, is not an issue to be determined on summary judgment. In granting or denying a motion for summary judgment, a judge makes no findings of fact. Indeed, the function of the summary judgment procedure is not to try the case or to decide issues of fact; rather, the procedure merely determines whether there is a

triable issue of fact. *See Coffey v. Derby Steel Co., supra,* 291 Md. at 254, 434 A.2d at 571.

█ Finally, when the moving party has set forth sufficient grounds for summary judgment, the opposing party must show with some precision that there is a genuine dispute as to a material fact. An opposing party can never defeat a motion for summary judgment by alleging in a general manner that there is such a dispute. *See Dietz v. Moore,* 277 Md. 1, 5, 351 A.2d 428, 431 (1976). With these considerations in mind, we turn to the case *sub judice.*

**B.**

█ The general power of attorney executed by Bankerd authorized King to "convey, grant, bargain and/or sell" the subject property "on such terms as to him may seem best." A strict construction of this broad language, however, makes clear that the instrument did not expressly authorize a gratuitous transfer of property. *See Shields v. Shields, supra,* 200 Cal.App.2d at 100–01, 19 Cal.Rptr. at 130–31. Because an agent must act for the benefit of his principal, we decline to interpret this broad, all-encompassing language as authority for the agent to make a gift of the principal's property.

█ The facts and surrounding circumstances presented in this case do not give rise to any fact or inference that King was authorized to make a gift of Bankerd's real property. In arguing that his conduct was reasonable under the circumstances, King points to his "beliefs" that Bankerd had abandoned the property, that Bankerd did not care about the property, and that Bankerd might be deceased. These arguments completely miss the mark. King's conduct could only be "reasonable" if Bankerd intended for King to give the property away. Although the facts and surrounding circumstances to which King points suggest reasons why he made the gift, they do not support an inference that Bankerd intended to authorize the gift.

Furthermore, the only evidence before the trial court that was relevant to this issue indicated that Bankerd did not intend to authorize King to give the subject property to Bankerd's wife or anyone else. In a letter Bankerd sent to King along with the executed power of attorney, Bankerd wrote that "[y]ou know if I outlive Va., [Bankerd's estranged wife] (and I'm ornery enough) you would certainly have a job on that Travilah Road (sic) [the subject property] bit *if* you would accept it, that is." [Emphasis in original.]. Nothing could more clearly belie an assertion that Bankerd authorized any gift of the property. Bankerd, by virtue of this correspondence, notified King that he clearly anticipated maintaining his interest in the property. Furthermore, King wrote Bankerd assuring him that if the latter executed the new power of attorney he would do nothing detrimental to Bankerd's interests. Certainly, had King believed that he was acquiring the authority to give away Bankerd's property, King would not have made this representation.

In sum, there is no genuine dispute as to any material fact. Moreover, the facts are not susceptible of more than one permissible inference. We therefore hold that the trial court did not err in granting Bankerd's motion for summary judgment.

JUDGMENT AFFIRMED.

APPELLANT TO PAY THE COSTS.