UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,
Plaintiff-Appellee,

v.

No. 95-2725

MASSOUD HEIDARY,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-94-2944-AW)

Argued: June 5, 1996

Decided: August 20, 1996

Before WIDENER, HALL, and MURNAGHAN, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion. Judge Hall wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Michael Joseph McAuliffe, QUINN, MCAULIFFE &
DUMAIS, Rockville, Maryland, for Appellant. Nell Berelson Strachan, VENABLE, BAETJER & HOWARD, L.L.P., Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

I.

On October 25, 1994, Appellee Massachusetts Mutual Life Insurance Company ("MassMutual") filed a declaratory judgment action in the United States District Court for the District of Maryland against Appellant Massoud Heidary. MassMutual sought a declaration that Heidary had made material misrepresentations to the company when he applied for disability insurance, that Heidary had released the company from all obligations under the disability policy on October 15, 1991, and that Heidary was accordingly not entitled to benefits under the policy.

In support of its claim for declaratory relief, MassMutual made the following allegations. Heidary applied to the company for disability insurance on April 4, 1990. MassMutual issued a disability policy, numbered 9-391-944, to Heidary on April 26, 1990. [1] On July 30, 1991, following an automobile accident, Heidary filed a claim for benefits. Upon investigating the claim, MassMutual discovered that Heidary had made material misrepresentations in his initial application for insurance: contrary to his claim to be a company president with managerial responsibilities, he spent at least half his time working as an electrician; contrary to his claim to have no known disorder of the joints and bones, he had suffered since childhood from a deformity caused by a broken arm; and contrary to his claim to have an annual income of $65,000, he earned $24,000 in 1990.

MassMutual further alleged that company officials then met with Heidary at the Dulles Airport on October 15, 1991. MassMutual

_____

[1] A copy of the policy filed with this court indicates that the policy became effective on April 12, 1990.

2

stated that, at that time, Heidary accepted (and later cashed) a check representing reimbursement for all of the premiums he had paid, plus interest, and signed a release form discharging the company from all liability under the disability policy. Two years later, in December 1993, Heidary contacted MassMutual seeking benefits under the disability policy. MassMutual refused to pay.

In his answer to MassMutual's complaint, and in a subsequent attempt to prove the existence of genuine issues of material fact, Heidary asserted that, in a single application, he had applied for both life insurance and disability insurance. Heidary also stated that his native language was Farsi, suggesting that he could not easily read the release form. He denied making material misrepresentations in his application and stated that he believed both that the release form he signed in October 1991 concerned a life insurance policy, rather than a disability policy, and that the check he received and cashed represented both a refund of life insurance premiums and the first installment of benefits under the disability policy.**2**

On August 11, 1995, the district court granted MassMutual's motion for summary judgment. The court observed that, under Maryland law, "absent fraud, duress or mutual mistake, . . . one having the capacity to understand a written document who reads and signs it, or, without reading it or having it read to him, signs it, is bound by his signature." Ray v. William G. Eurice & Bros. , 93 A.2d 272, 278 (Md. 1952); accord Creamer v. Helferstay, 448 A.2d 332, 339-42 (Md. 1982) (reaffirming the rule articulated in Ray and stating that, "absent intentional, culpable conduct, such as fraud, duress or undue influence, a unilateral mistake is ordinarily not a ground for relief from a contract"). Finding no evidence which could lead a rational juror to conclude that fraud, duress, or a mutual mistake had occurred, the dis-

_____

**2** Heidary also asserted three counterclaims against MassMutual: that the company had breached its insurance contract by refusing to pay disability benefits, had committed constructive fraud by failing to investigate his application for insurance at the time it was made, and had negligently misrepresented that the application was acceptable. On April 5, 1995, the district court severed Heidary's counterclaims from the declaratory judgment action. Upon granting MassMutual's motion for summary judgment, the court found Heidary's counterclaims moot.

trict court ruled that Heidary was bound by the terms of the release form he signed in October 1991.

Heidary has argued that the district court erred when it granted MassMutual's summary judgment motion.

The district court's grant of summary judgment must be reviewed de novo. Tuck v. Henkel Corp., 973 F.2d 371, 374 (4th Cir. 1992), cert. denied, 507 U.S. 918 (1993). The party moving for summary judgment has "the burden of showing the absence of a genuine issue as to any material fact." Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). The underlying facts and all inferences from those facts "must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); accord Russell v. Microdyne Corp., 65 F.3d 1229, 1240 (4th Cir. 1995) ("Summary judgment is . . . appropriate where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."). "If the evidence [presented by the nonmoving party] is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (stating that trial judges have an "affirmative obligation" to prevent factually unsupported claims from going to trial).

II.

Heidary bases his allegation of error upon the following factual assertions. First, he does not read or speak English well; his native language is Farsi. Second, using a single insurance application form, he believed he had applied for both life insurance and disability insurance. Third, Mohamed Reza Vaziri--a MassMutual agent who speaks Farsi--was one of two MassMutual agents present at the October 1991 meeting and told Heidary, in Farsi, that (1) the check being offered by the other MassMutual agent represented the first installment of disability benefits and (2) the release form concerned only a life insurance contract. Fourth, given the release form's use of the phrase "on the life of Massoud Heidary" and the absence of any use

4

of the word "disability" in the release, he believed that the release was effective with respect only to a life insurance policy.

Even though Vaziri has denied making the statements attributed to him by Heidary, our duty to view the evidence in the light most favorable to Heidary compels us to proceed under the assumption that Heidary's account of Vaziri's statements is accurate. We nevertheless conclude that, on the basis of the evidence before us, no reasonable trier of fact could return a verdict in favor of Heidary and that the district court therefore did not err when it granted MassMutual's motion for summary judgment. We reach that conclusion for the following reasons.

First, no reasonable trier of fact could conclude that Heidary applied--or reasonably believed he had applied--to MassMutual for life insurance. Appearing at the top of the first page of the insurance application submitted by Heidary were several boxes by which the applicant was to indicate, with a check mark, the type of insurance he wished to obtain or the means by which he wished to obtain it: "New Life Insurance," "New Disability Insurance," "New Policy as Exchange of Term Insurance," or "Conversion of Term or Disability Insurance." On Heidary's application, only one box was checked-- the box next to the phrase "New Disability Insurance." The box next to the phrase "New Life Insurance" was left blank. The one-and-one-half-page section of the application titled "Life Insurance Data," beginning on the first page of the application, was left blank. The one-and-one-half-page section titled "Disability Insurance Data" was fully completed. While a number of questions appearing under the heading "Complete for Life Application Only" were completed, those questions appeared as part of the "Agent's Statement," which was signed only by the issuing agent.

Second, the insurance policy issued in response to Heidary's application bears the title, on the first page of the policy, "Disability Income Policy: Benefits Payable For Loss Of Earned Income." The terms of the policy similarly unambiguously indicate that the policy was a disability insurance policy, not a life insurance policy.**3**

_____
**3** Heidary has stated that he does not recall ever receiving a copy of the policy and that he therefore had no means by which to determine the pol-

5

Third, if Heidary believed he could not read the release form he signed in October 1991, he could have asked Vaziri or the other MassMutual agent to read it to him. See Ray, 93 A.2d at 278 (stating that a person with the capacity to understand a document is bound by his signature on it even if he did not read it or "hav[e] it read to him").

Fourth, the release form Heidary signed clearly referred to the disability insurance policy by using the policy number. The form stated, in pertinent part:

> IN CONSIDERATION OF the payment of $4,185.43, representing a refund of premium plus interest under Policy No. 9 391 944 issued by Massachusetts Mutual Life Insurance Company of Springfield, Massachusetts, on the life of Massoud Heidary, the undersigned hereby delivers said policy to said company for cancellation and hereby releases and forever discharges said Company of and from all manner of claims . . . which she/he ever had . . . by reason of the issuance of said policy of insurance . . . .

It is true that the release makes reference to a policy "on the life of Massoud Heidary." MassMutual argues that those words do not suggest that a life insurance policy was being rescinded, but instead "properly manifest a reference [to] Heidary as the life in being to which the document applies." We find the release's language, in solely that respect, ambiguous: a rational trier of fact could easily conclude that a reader of only that portion of the document would believe that it was a life insurance policy that was being cancelled. As MassMutual points out, though, the release makes clear reference to the number of the disability insurance policy. In light of that fact, together with the fact that Heidary applied for and was issued only a disability insurance policy and that the release form makes reference to a refund of premiums plus interest--thereby disallowing the inference that the check offered to and accepted by Heidary represented the first installment of disability benefits--we find (1) that no reason-

_____

icy's nature. Even if that is true--and we must assume that it is--it is not a factual allegation tending to show fraud, duress, or mutual mistake, and therefore does not enable Heidary to escape from the terms of the release form he signed in October 1991. See Ray, 93 A.2d at 278.

6

able trier of fact could conclude that the release form was fatally ambiguous and (2) that no reasonable trier of fact could conclude that Heidary was not bound by his signature on the form due to fraud, duress, or mutual mistake. See Ray, 93 A.2d at 278; Creamer, 448 A.2d at 339-42.

For the foregoing reasons,**4** the judgment of the district court is

AFFIRMED.

HALL, Circuit Judge, dissenting:

The release form is not clear on its face; even the majority has to concede that the form's reference to "Policy No. 9 391 944 . . . on the life of Massoud Heidary" could have led someone reading that portion of the form to "believe that it was a life insurance policy that was being cancelled." Ante, at 6.**1** The majority's decision rests completely

_____

**4** Though we have not relied upon the observation in reaching our conclusion, it might also be noted that, during oral arguments, counsel for MassMutual stated that, "to the penny," the amount of premiums refunded to Heidary corresponded to the cost of obtaining disability insurance during the period in question.

**1** The other portions of the form on which the majority relies -- the number of the disability policy and the reference to a refund of premiums (see majority op. at 6) -- lend scant support to its decision. The inclusion of the "Policy No." -- not, by the way,"Disability Policy No." -- is virtually irrelevant; few persons have committed to memory even a snippet of what may be numerous insurance policy numbers, (e.g., auto, homeowner's, health and hospitalization, life, disability). When we factor in Heidary's allegation that he never received a copy of the policy (a fact that we assume to be true, see id. at 5-6 n.3), the relevance of the policy number in the release form approaches zero.

Similarly, the reference to "a refund of premiums" is hardly supportive of MassMutual's position. The refund language is consistent with Heidary's claim that he was told that part of the amount was indeed a refund of the premiums under the policy "on the life of" Heidary. That the form said "refund," but (according to Heidary) included disability benefits as well, is no more a basis for summary judgment for the company as the inclusion of the words "on the life of" is a basis for summary judgment for Heidary. See King v. Bankerd, 492 A.2d 608, 612 (Md. 1985) (ambiguities in contract are resolved against the drafter). The release form simply does not, by itself, mandate judgment against Heidary at this point.

7

on its conclusion that no trier of fact could find that Heidary "reasonably believed he had applied" for a life insurance policy in addition to the disability policy. Id. at 5. This conclusion is reached after an examination of the policy application itself, without recourse to any other evidence. My examination of the same document, together with the other evidence (all viewed in the light most favorable to Heidary), leads me to conclude that Heidary's belief was not so unreasonable as to preclude a finding of fraud.

The question is not whether Heidary had an enforceable agreement for life insurance coverage, but, rather, whether his alleged misapprehension of fact -- that he had such a policy -- was so unreasonable as to bar his claim of fraud. In evaluating the reasonableness of the belief, it must be borne in mind that he is also alleging that the agent exploited his misapprehension by explaining that only a life insurance policy was being affected by the form.

The application was filled out by the agent and signed by Heidary in two places. On the seventh page is an "Agent's Statement." Under section 4, headed in bold type "Complete for Life Application Only," Heidary's income is listed, and two other lines (unearned income and spouse's income) are crossed through to indicate that they are not applicable. Section 5, "Marital Status," has been completed, as has section 8, which asks about other policies "on the life of the Insured." While the form alone certainly could not establish a claim for life insurance benefits, it also is not so clear as to preclude, as a matter of law, Heidary's fraud claims regarding the release form. I believe that a jury could find that Heidary's belief that he had applied for two policies was not unreasonable.

Once this hurdle is crossed, it is a small step to conclude that a jury could also find that Heidary reasonably thought he was rescinding the policy "on [his] life" in return for life insurance premiums to date and a partial payment on his disability claim.**2** When all the evidence is

_____

**2** The majority posits two other bases for affirmance. One basis, that the policy itself was clearly a disability policy only (ante, at 5), is irrelevant in light of Heidary's allegation (which the majority concedes must be believed at this point in the litigation, id. at n.3) that he never received a copy of the policy.

8

taken into account -- a hurried meeting at the airport on the heels of Heidary's initial claim; his reluctance to sign an ambiguous release form until a fellow speaker of Farsi explained the necessity of his signature to get his disability benefits; his limited grasp of English, particularly written English; prompt and repeated attempts to discover why he was not getting continued benefits[3] -- I believe there remain genuine issues of material fact that merit further consideration. Accordingly, I would vacate the judgment and remand for further proceedings.

I respectfully dissent.

_____

The other basis, that Heidary could have asked one of the agents to read the release to him (id. at 6), ignores the essence of Heidary's fraud claim. He asserts that he asked for an explanation of the form and that he was told that it was merely a rescission of his life insurance policy and a prerequisite for the initial payment of disability benefits. That he did not have it read to him word for word is hardly a basis for summary judgment for the insurance company.

[3] When disability benefits did not follow, Heidary claims that, after repeated telephone calls to MassMutual, he finally received a letter from the company explaining what had happened. A friend wrote a letter for him that began: "After some two years of telephone requests, thank you for finally clearifying [sic] the reason that Mass Mutual cancelled my disability policy"; the letter then recounted the same story that forms the basis of his fraud claims.

9