**J.B. KERBOW, et al.**

v.

**The FROSTBURG STATE UNIVERSITY FOUNDATION, INC.**

**Civil Action No. WMN–98–2195.**

United States District Court,
D. Maryland.

March 19, 1999.

Andrew J. Graham of Kramon & Graham, Baltimore, MD, for plaintiffs.

James B. Sarsfield of Hamilton & Hamilton, LLP, Washington, D.C., for defendant.

### MEMORANDUM OPINION

BREDAR, United States Magistrate Judge.

This is a diversity action in which the grantors of an educational trust allege breach of the trust agreement and breach of fiduciary duty and seek equitable relief against the trustee. (Paper No. 1). It has been referred to the undersigned for all further proceedings (Paper No. 17), and pending before the Court is the Motion of Defendant to Dismiss or, in the Alternative, for Summary Judgment. (Paper No. 18).

■ Defendant's motion is supported by exhibits, and reference to those materials is necessary to decide the issue presented. Accordingly, the motion is deemed to be a motion for summary judgment. Fed. R.Civ.P. 12(b). The sole issue raised in the motion is whether the plaintiffs have standing to bring this action.[1] The issue

---

1. Defendant swerves briefly onto a new tack in the closing pages of his reply memorandum, wherein he suggests that this Court lacks subject-matter jurisdiction over an action to remove trustees or fiduciaries because of exclusive-forum provisions in Maryland law. (Paper No. 23, pp. 12–16). It is well settled, however, that the states are without power to enlarge or reduce federal diversity jurisdiction. If a substantive right is enforceable in state Court, it is enforceable in the Courts of the United States so long as the controversy is between citizens of different states and involves the minimum amount of money. See, Markham v. City of Newport News, 292 F.2d 711 (4th Cir.1961).

has been fully briefed (Papers No. 21 and 23) and, pursuant to Local Rule 105.6, no hearing is deemed necessary.

## I.  Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. On the other hand, on those issues on which the nonmoving party will have the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir.1967), *cert. denied*, 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## II.  Background

Plaintiffs, in 1988, transferred money in trust to certain faculty members of the Department of Foreign Languages and Literatures at Frostburg State University (FSU) in Frostburg, Md. The trust funds, to be known as the Leila Brady Suter Scholarship Fund, were to be used in perpetuity for scholarships for foreign language students to be selected by a scholarship committee established under the terms of the trust agreement using criteria set forth in the agreement. (Paper No. 18, Exhibit 1).

The trustors retained the power during their lives to appoint a successor trustee upon the existence of a vacancy, for whatever cause. *Id.* at ITEM EIGHT. They also reserved to themselves the power to amend the trust agreement from time to time "whenever necessary or advisable for the more convenient or efficient administration of this trust or to enable the Trustee to carry out the purpose of this Trust more effectively," but the agreement barred any amendment that would "alter the intention of the Trustors that this trust be operated exclusively for educational purposes within the United States or any of its possessions ..." *Id.* at ITEM TWELVE. Finally, the trust agreement

provided that, in all cases, it would be interpreted under the law of the State of Maryland. *Id.* at ITEM FIFTEEN.

In 1989, the plaintiffs signed a letter, described by the defendant as a "letter of intent," addressed to the Board of Directors of the FSU Foundation stating:

> The enclosed documentation will transfer all assets of the Leila Brady Suter Trust Fund to the FSU Foundation, Inc. for the establishment of the Leila Brady Suter Scholarship Fund. Criteria for use of this fund are attached. All rules and regulations for the use of this fund are subject to the standard operating procedures of the FSU Foundation, Inc.
>
> . . .
>
> It is our intent that this fund benefit the students and faculty of the Foreign Languages and Literatures Department at Frostburg State University. In the event the FSU Foundation, Inc. would no longer exist, it would be our desire to have this fund transferred to the University of Maryland System Foundation to benefit students from Western Maryland majoring in the foreign languages at a public institution of higher education in Maryland.

(Paper No. 18, Exhibit 2).[2]

Within a week of the "execution" of the above-referenced letter, the plaintiffs and the trustee signed an amendment to the scholarship trust agreement in which the trustee resigned; the plaintiffs appointed Frostburg State University Foundation, Inc. as successor trustee in accordance with ITEM EIGHT of the trust agreement; and the trust agreement was confirmed and republished as amended. (Paper No. 18, Exhibit 3).

In January 1993, the plaintiffs signed another document, again addressed to the FSU Foundation Board of Directors, headed "AMENDMENT TO LETTER OF INTENT OF DECEMBER 7, 1989", containing the following:

> Change the last paragraph to read:
>
> It is our intent that this fund benefit the students and faculty of the Foreign Languages and Literatures Department at Frostburg State University. In the event that Frostburg State University or the F.S.U. Foundation, Inc., should no longer exist or that the Foreign Languages and Literatures Department or the foreign language major should be eliminated, making it impossible to fulfill all the conditions and intents specified in the criteria and addenda attached to the original documents, it would be our desire to have this fund distributed equally among: Archway Station, Inc. of Allegany County; The Family Resource Center of Allegany County; The Western Maryland Christian Housing Authority; and St. John's Episcopal Church of Frostburg, Maryland.

(Paper No. 18, Exhibit 4).[3]

Finally, in May 1996, the plaintiffs, the executive director of the FSU Foundation, Inc., and the chairman of the FSU foreign languages department signed a "Memorandum of Understanding" that appears, in pertinent part, to provide that if a major in French were no longer to be offered at FSU, the scholarship awards would be suspended until the French major was restored and the disposition of the earned income of the fund would be determined by the plaintiffs in consultation with the Board of Directors of the FSU Foundation. (Paper No. 18, Exhibit 5).

---

**2.** It was unclear from defendant's motion what "documentation," if any, was enclosed with this letter or even whether the letter was sent to the addressee. The defendant averred simply that the letter was "executed" by the plaintiffs. Defendant's reply memorandum illuminates this matter by stating that the letter, in fact, was transmitted to the FSU Foundation Board of Directors and that the "enclosed documentation" included the December 1989 amendment to the scholarship trust. (Paper No. 23, Exhibit 7).

**3.** Once again, it is unclear at this point whether this document was sent to and received by the addressee.

Over the years, the plaintiffs made additional contributions to the fund, some small contributions were made by others, and matching funds totaling $75,000 were received from the State of Maryland. The defendant states that the contributions to the principal of the fund, not including interest earned, total approximately $150,000, of which the plaintiff contributed approximately half. (Paper No. 18, p. 5).

### III. Analysis

The defendant argues that the general rule of law regarding charitable contributions, either as absolute gifts or in trust, is that the donors have no standing to bring an action to enforce the terms of the gift or adherence to the provisions of the trust unless they have specifically reserved the power to do so. The defendant cites *Baltimore Arts Festival v. Mayor and City Council of Baltimore*, 326 Md. 653, 607 A.2d 1, 4 (1992), and other non-Maryland and secondary authorities in support of this proposition and contends that the general rule must be applied in this case. Furthermore, the defendant suggests in its reply brief that the trust amendment in 1989 had the legal effect of dissolving the trust and converting the res into an absolute gift.

The plaintiffs respond that Maryland statutory law clearly provides that they have standing to bring this action. As noted by the plaintiffs, Md.Code Ann., Estates and Trust § 15–112(b) provides that procedures for the removal of a fiduciary are to be conducted in accordance with the Maryland Rules applying to fiduciaries. Maryland Rule 10–501, in turn, provides that a fiduciary "or other interested person" may file a petition requesting a Court to assume jurisdiction over a fiduciary estate. Maryland Rule 10–103(d) defines a "fiduciary estate" as the real or personal property administered by a fiduciary and Rule 10–103(f)(2) includes "the creator of the fiduciary estate" in the definition of "interested person". It is clear, therefore, that Maryland statutory law permits the creator of a charitable trust to petition the Court to assume jurisdiction over the trust.

Moreover, it appears to the Court that even were the general common law rule to be applied in this case, it would not bar an action by the plaintiffs. The trustors, by the clear terms of the trust agreement, have reserved to themselves alone the power to amend the trust agreement "to enable the Trustee to carry out the purpose of this Trust more effectively" and, in fact, they appear to have exercised that power at least once. Notwithstanding defendant's contentions that the amendment to the trust agreement in 1989 brought an end to the trust and converted the *res* from a trust fund into an unencumbered gift to the general scholarship fund, what the trustors actually did in the amendment of the trust was reaffirm and retain the measure of control originally embodied in the agreement. Furthermore, during the life of the trust the defendant has acted as if the plaintiffs have retained a measure of control, as evidenced by the "Memorandum of Understanding" of 1996.

The *Baltimore Arts Festival* case cited by the defendant is not helpful to its position. That case merely states:

> There is broad authority that in the absence of an express reservation or condition imposed at the time the gift is made, a donor may not ordinarily seek the aid of a Court for the imposition of a constructive trust upon a charitable trust, and that an action for the protection of general donors or public beneficiaries ordinarily should be brought by the Attorney General.

*Baltimore Arts Festival, Inc. v. Mayor and City Council of Baltimore*, 607 A.2d at 4 (citations omitted). In this case, there were conditions imposed on the gift and the trustors, furthermore, vested in themselves a vehicle by which they could stand guard over those conditions.

Accordingly, whether the instant case is considered in light of the statutory or com-

mon law of Maryland, the defendant has not shown that plaintiffs lack standing to bring this action and the motion for summary judgment will be denied by separate order.